**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| IN RE:<br><br>MARIA GABRIELA STOIBER,<br><br>  Debtor. | CASE NO.: 11-31714<br><br>CHAPTER 11 |

**DISCLOSURE STATEMENT**

Proposed By: Maria Gabriela Stoiber
Dated: April 19, 2012

<u>Submitted by</u>:

Sidney J. Diamond
Karla P. Martinez
3800 N. Mesa, Suite B-3
El Paso, Texas 79902
(915) 532-3327 (Voice)
(915) 532-3355 (Fax)
**<u>sidney@sidneydiamond.com</u>**

Attorneys for the Debtor

# Table of Contents

**LIST OF EXHIBITS** ...................................................................................................**x**

**DEBTOR'S DISCLOSURE STATEMENT** ..................................................................**1**

**FILED BY: Maria Gabriela Stoiber** .......................................................................**1**

**SECTION 1- INTRODUCTION** ..................................................................................**1**

1.   Preliminary Statement:                                                                                            1

   1.1.   Approval of the Disclosure Statement by the Court:.................................................. 1

   1.2.   Holders of Claims:...................................................................................................... 1

   1.3.   Vote: ........................................................................................................................... 1

   1.4.   Late Ballots:............................................................................................................... 2

   1.5.   Content of the Plan and Disclosure Statement: ........................................................ 2

   1.6.   Facts Are as of the Filing Date of this Disclosure Statement:.................................. 2

   1.7.   Forward Looking Statements: .................................................................................... 3

   1.8.   Objections to Plan and Confirmation Hearing: ........................................................ 3

**SECTION 2 – DISCLAIMERS** ...................................................................................**3**

2.   Disclaimers, Representations and Accuracy:                                                              3

   2.1.   No Judgment on the Merits of the Plan and the Disclosure Statement by the Court ... 3

   2.2.   No Representations:.................................................................................................... 3

   2.3.   Materiality .................................................................................................................. 3

   2.4.   Additional Information:.............................................................................................. 4

**SECTION 3 – CHATPER 11** .......................................................................................**4**

3.   The Purpose of Chapter 11:  Business Reorganization and Formulation of a Plan:      4

   3.1.   Chapter 11: ................................................................................................................. 4

   3.3.   Definition of Impairment:.......................................................................................... 4

   3.4.   Confirmation Requirements and Procedures............................................................. 5

   3.5.   Confirmation Hearing:............................................................................................... 6

   3.6.   The Plan and Disclosure Statement Meets Statutory Requirements: ........................ 7

   3.7.   Who May Object to Confirmation of the Plan: ......................................................... 8

   3.8.   Who May Vote to Accept/Reject this Plan:............................................................... 8

   3.9.   What is an Allowed Claim/Interest: .......................................................................... 8

   3.10.  Bar Date:..................................................................................................................... 8

   3.11.  What is an Impaired Claim/Interest:.......................................................................... 8

   3.12.  Who is Not Entitled to Vote: ..................................................................................... 8

   3.13.  Who Can Vote in More Than One Class:................................................................... 9

3.14.   Votes Necessary to Confirm the Plan:...........................................................9

3.15.   Votes Necessary for a Class to Accept the Plan ..........................................9

3.16.   Treatment of Non-Accepting Classes ...........................................................9

3.17.   Cramdown: ......................................................................................................9

3.18.   With Respect to a Secured Claim, "Fair and Equitable" Means Either:....................10

3.19.   With respect to an Unsecured Claim "Fair and Equitable" Means Either:.................10

3.20.   Effect of Confirmation: ...............................................................................10

**SECTION 4- FINANCIAL PICTURE OF THE DEBTOR ........................................ 10**

4.   History And Events Leading To The Filing Of This Chapter 11 Case:                     10

4.1.   History .........................................................................................................11

4.2.   Events Leading To This Chapter 11 Case:. ..................................................11

4.3.   Operations In Chapter 11:............................................................................12

4.4.   Type of Apartment Complexes Operated by the Debtor: ...........................12

4.5.   Maintenance and Major Repairs..................................................................12

4.6.   Economic Conditions. ..................................................................................12

4.7.   Monthly Operation Reports:........................................................................12

4.8.   Accounting Method Used and Source of Financial Information:...............12

**SECTION 5- BASIS OF THE PLAN ........................................................................ 13**

5.   Basis Of The Plan: A                                                                          13

5.2.   Future Management and Compensation:.......................................................13

5.3.   Future Income and Expenses of Stoiber:.....................................................13

**SECTION 6 – ANALYSIS AND VALUATION OF PROPERTY ............................ 13**

6.   Analysis and Valuation of Property                                                         14

6.1.   Real Property of the Debtor..........................................................................14

6.2.   Exempt Tangible Personal Property of Maria Gabriela Stoiber:................15

6.3.   Intangible Personal Property of Maria Gabriela Stoiber: ...........................15

6.4.   Liquidation Value of the Maria Gabriela Stoiber's Assets: ........................16

**SECTION 7 – CLASSIFICATION OF CLAIMS AND INTERESTS........................ 17**

7.   Classification of Claims Under this Plan                                                   17

7.1.   Class 1 – Administrative Expenses:                                                        17

7.2.   Class 2 – Unsecured Claims ........................................................................17

7.3.   Class 3 – Secured Claims: ...........................................................................17

7.4.   Class 4 – Retained Interest in Property by Stoiber ......................................19

**SECTION 8 – IMPAIRED CLASSES AND CLAIMS AND INTERESTS............... 19**

8.   Impaired Classes of Claims and Interest: Classes Entitled to Vote for Acceptance or Rejection:  19

8.1.   "Best Interest of Creditors Test": ............................................................... 19

8.2.   This Plan  Does Not Discriminate Unfairly: ........................................... 20

8.3.   This Plan Does Not Discriminate Unfairly: This Plan  is Fair and Equitable ........... 20

**SECTION 9 – TREATMENT OF CLAIMS AND INTEREST ................................. 20**

9.   Distribution To Creditors and Interests Under the Plan:   20

9.1.   Summary of Plan Payments:............................................................... 20

**CLASSIFIED CLAIMS .............................................................. 20**

9.2.   Class 1 – Administrative Claims ......................................................... 20

9.3.   Class 2 – Unsecured Claims: .............................................................. 21

9.4.   Class 3(a) – San Francisco Historic District:.................................... 22

9.5.   Class 3(b) –................................................................................ 23

9.6.   Class 3(c) .................................................................................... 24

9.7.   Class 3(d) – City of El Paso: ............................................................. 25

9.8.   Class 3(e) – The City of El Paso: ...................................................... 26

9.9.   Class 3(f) – The City of El Paso:....................................................... 27

9.10.  Class 3(g) – The City of El Paso: ..................................................... 29

9.11.  Class 3(h) –................................................................................ 30

9.12.  Class 3(i) – City of El Paso Property Taxes: .................................... 31

9.13.  Class 4 – Retained Interest in Property by Stoiber ........................... 31

10.   Means for Execution of this Plan:   32

10.1.  Source of Funds - Future Earnings:................................................ 32

10.2.  Cash Payments:.......................................................................... 32

**SECTION 11 - FEASIBILITY OF THE PLAN................................................ 32**

11.   Feasibility   32

11.1.  Future Earnings: ........................................................................ 32

11.2.  No Further Reorganization Proceedings: ....................................... 32

**SECTION 12 - CLAIMS ................................................................ 32**

12.   Claims Allowance Procedure and Conditions to Distribution:   32

12.1.  Objections to Claims ................................................................. 32

12.2.  No Distribution until Objection Resolved:.................................... 32

12.3.  Deficiency Claims ..................................................................... 33

12.4.  Other Claims, Including Amendment to Claims: ........................... 33

12.5.  Performance of Obligations:....................................................... 33

**SECTION 13 – GENERAL TERMS AND CONDITIONS ........................................ 33**

13.   General Terms and Conditions:   33

13.1.   Revestment of Title ........................................................................... 33

13.2.   Discharge: ........................................................................................ 33

13.3.   Preservation of Bankruptcy Causes of Action ............................................ 34

13.4.   No Additional Charges ...................................................................... 34

13.5.   De Minimi Distributions: .................................................................... 34

13.6.   Closing the Case ............................................................................... 34

13.7.   Time Period to Close Case .................................................................. 35

13.8.   Non-Waiver ..................................................................................... 35

13.9.   Law Governing Construction ............................................................... 35

**SECTION 14 - DEFAULT BY MARIA GABRIELA STOIBER OF ANY UNSECURED CLAIM** ....................................................................................... **35**

14.    Default In Payment of Claims of Unsecured Creditors:                     35

14.1.   Conditions of Default and Remedies ..................................................... 35

14.2.   Defenses: ........................................................................................ 35

**SECTION 15 - TERMS AND CONDITIONS APPLICABLE TO SECURED CREDITORS** ....................................................................................... **35**

15.    Terms and Conditions Relating to Secured Creditors:                     35

15.1.   Preserved Liens: ............................................................................... 36

15.2.   Release of Liens ............................................................................... 36

15.3.   Adoption of Terms and Conditions ....................................................... 36

15.4.   Determination of Secured Status: ......................................................... 36

15.5.   Escrow Account to be Maintained ......................................................... 36

15.6.   Escrow Account may be Transferred ..................................................... 36

15.7.   Section 1111(b) Election .................................................................... 37

(a)    Present Dollar Value: ......................................................................... 37

(b)    Total of Payments ............................................................................. 37

(c)    Condition to be Satisfied: .................................................................... 37

**SECTION 16 - TREATMENT OF LATE CHARGES, INTEREST, PENALTIES, COSTS, FEES AND ADDITIONAL CHARGES** .................................................... **37**

16.    Determination of Interest and Other Fees:                     37

**SECTION 17 - EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .......... **38**

17.    Unexpired Leases and Executory Contracts:                     38

**SECTION 18 - SATISFACTION OF CLAIMS AND INTERESTS** ........................... **38**

18.    Satisfaction of Claims and Interests                     38

**SECTION 19 - RETENTION OF JURISDICTION** .................................................... **38**

19.    Retention of Jurisdiction by the Court:                     39

19.1.   Claims: ............................................................................................................ 39

19.2.   Title to and Liens Against Assets: ................................................................. 39

19.3.   Correction of Defects ..................................................................................... 39

19.4.   Modification After Confirmation: .................................................................. 39

19.5.   Enforcement: ................................................................................................... 39

19.6.   Further Orders: ................................................................................................ 39

19.7.   Previous Orders: .............................................................................................. 39

19.8.   Continuing Jurisdiction: .................................................................................. 39

19.9.   Adversary Proceedings: ................................................................................... 40

19.10. Implementation of Plan: .................................................................................. 40

19.11. Conclusion: ...................................................................................................... 40

**SECTION 20 - ALTERNATIVES TO THIS PLAN ................................................. 40**

20.     Liquidation Analysis of the Debtor's Property:                                    40

20.1.   Valuation of the Assets: ................................................................................... 40

20.2.   Another Plan: .................................................................................................... 41

20.3.   Summary: .......................................................................................................... 41

**SECTION 21 - RISKS TO CREDITORS UNDER THIS PLAN .............................. 41**

21.     Risk Factors:                                                                              41

21.1.   Economic Conditions ...................................................................................... 41

21.2.   Housing Market ................................................................................................ 41

**SECTION 23 - RESERVATION OF RIGHTS ......................................................... 41**

22.     Reservation of Rights:                                                                    41

**SECTION 24 - TAX CONSEQUENCES OF CONSUMMATION OF THIS PLAN 42**

23.     General                                                                                    42

23.1.   Tax Consequences to Creditors: ...................................................................... 42

23.2.   Tax Consequences to Debtor: .......................................................................... 43

**SECTION 25 - SUMMARY OF SIGNIFICANT ORDERS ENTERED IN THE CASE ............................................................................................................................ 43**

24.     Summary of Significant Orders:                                                           43

24.1.   Use of Cash Collateral and Adequate Protection ........................................... 43

**SECTION 26 – DEFINITIONS ................................................................................. 43**

25.     Definitions:                                                                               43

25.1.   Administrative Claim: ...................................................................................... 43

25.2.   Administrative Claimant: ................................................................................. 43

25.3.   Administrative Expenses: ................................................................................. 43

25.4.   Allowance Date: ................................................................................................. 44

25.5.   Allowed: Allowed ............................................................................................... 44

25.6.   Allowed Claim: .................................................................................................. 44

25.7.   Allowed Priority Claim ...................................................................................... 44

25.8.   Allowed Secured Claim: ..................................................................................... 44

25.9.   Allowed Unsecured Claim: ................................................................................ 45

25.10. Stoiber: .............................................................................................................. 45

25.11. Assessed Charges: ............................................................................................. 45

25.12. Bankruptcy Case: .............................................................................................. 45

25.13. Bankruptcy Court: ............................................................................................. 45

25.14. Bankruptcy Rules: ............................................................................................. 45

25.15. Bar Dates: .......................................................................................................... 45

25.16. Business Day: .................................................................................................... 45

25.17. Case: .................................................................................................................. 45

25.18. Chapter 11 Case: ............................................................................................... 45

25.19. Chapter 11: ........................................................................................................ 45

25.20. Claim or Claims ................................................................................................ 46

25.21. Claimant or Claimants ...................................................................................... 46

25.22. Claims of the Estate: ......................................................................................... 46

25.23. Class of Claims and Payment: .......................................................................... 46

25.24. Class or Classes: ............................................................................................... 46

25.25. Code: .................................................................................................................. 46

25.26. Collateral ........................................................................................................... 46

25.27. Collateral Value: ............................................................................................... 46

25.28. Confirmation: .................................................................................................... 46

25.29. Confirmation Date: ........................................................................................... 47

25.30. Confirmation Hearing: ...................................................................................... 47

25.31. Confirmation Order: .......................................................................................... 47

25.32. Court: ................................................................................................................. 47

25.33. Creditor or Creditors: ........................................................................................ 47

25.34. Cross-References, etc.: ...................................................................................... 47

25.35. Debtor: ............................................................................................................... 47

25.36. Debtor-In-Possession: ....................................................................................... 47

25.37. Disallowed Claim: ............................................................................................. 47

25.38. Disclosure Statement ................................................................................................ 47

25.39. Disputed Amount: .................................................................................................... 47

25.40. Disputed Administrative Claim: ............................................................................... 47

25.41. Disputed Claim: ....................................................................................................... 48

25.42. Effective Date: ......................................................................................................... 48

25.43. Entity: ....................................................................................................................... 48

25.44. Estate: ....................................................................................................................... 48

25.45. Fee Request: ............................................................................................................. 48

25.46. Final Decree: ............................................................................................................ 48

25.47. Final Order: .............................................................................................................. 48

25.48. Holder ....................................................................................................................... 48

25.49. Lien: .......................................................................................................................... 48

25.50. Order: ........................................................................................................................ 49

25.51. Order Confirming Plan: ........................................................................................... 49

25.52. Other Priority Claims: ............................................................................................. 49

25.53. Person ....................................................................................................................... 49

25.54. Plan: .......................................................................................................................... 49

25.55. Plan Payments: ......................................................................................................... 49

25.56. Plan Year: ................................................................................................................. 49

25.57. Pre-Petition Agreement: .......................................................................................... 49

25.58. Preservation of the Estate: ...................................................................................... 49

25.59. Priority Claim: .......................................................................................................... 49

25.60. Priority Creditor: ...................................................................................................... 50

25.61. Priority Tax Claim .................................................................................................... 50

25.62. Professional Fees ...................................................................................................... 50

25.63. Professional Person: ................................................................................................. 50

25.64. Property of the Estate: .............................................................................................. 50

25.65. Proponent: ................................................................................................................. 50

25.66. Pro Rata: ................................................................................................................... 50

25.67. Property or Properties .............................................................................................. 50

25.68. Reorganized Debtor: ................................................................................................ 50

25.69. Rule or Rules: ........................................................................................................... 50

25.70. Schedules: ................................................................................................................. 50

25.71. Secured Claim: ......................................................................................................... 51

25.72. Substantial Consummation of this Plan: ................................................................... 51

25.74. Tax Claim ................................................................................................................... 51

25.75. Tax Claimant: ............................................................................................................ 51

25.76. Unclaimed Property: .................................................................................................. 51

25.77. Unsecured Claim: ...................................................................................................... 51

25.78. Unsecured Creditor: ................................................................................................... 51

25.79. Unsecured Non-Priority Claim .................................................................................. 51

25.80. United States Trustee Fees: ....................................................................................... 52

## TABLES AND THEIR LOCATIONS

SUMMARY OF MONTHLY OPERATING REPORTS FOR MARIA GABRIELA STOIBER…..22

SUMMARY OF MARIA GABRIELA STOIBER'S REAL PROPERTY…………………………………………………………………..…..24

SUMMARY OF MARIA GABRIELA STOIBER'S EXEMPT TANGIBLE PERSONAL PROPERTY…………………………………………………………………...................24

SUMMARY OF THE MARIA GABRIELA STOIBER'S INTANGIBLE PERSONALPROPERTY…………………………………………………………………...25

SUMMARY OF ALL PROPERTY……………………….......................................................26

**LIST OF EXHIBITS**

Exhibit "A":    Annual Statement of Operations For Ten (10) Years.

Exhibit "B":  Projected Annual Statement of Cash Flows for Ten (10) Years.

Exhibit "C":  Monthly Statement of Operation for One (1) Year

Exhibit "D":  Projected Monthly Statement of Cash Flows For Year One (1).

Exhibit "E":  Pro-forma Balance Sheet Of Maria Gabriela Stoiber

Exhibit "F":  Is the monthly income of Stoiber and her monthly expenses.

Exhibit "G":  Which sets forth the estimated payments to be made under the plan to creditors and retained interest in property

Exhibit "H":  The assumptions used in preparing the forecasts

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| IN RE:<br><br>MARIA GABRIELA STOIBER,<br><br>  Debtor. | CASE NO.: 11-31714<br><br>CHAPTER 11 |

**DEBTOR'S DISCLOSURE STATEMENT**

**DATED:**

**FILED BY: Maria Gabriela Stoiber**

### SECTION 1- INTRODUCTION

1. **Preliminary Statement:** The Plan, the Disclosure Statement, and the accompanying Ballots are being furnished to the holders of Claims against the Debtor and Chapter 11 Estate of Ms. Maria Gabriela Stoiber ("Stoiber"). Capitalized terms used in the Plan and Disclosure Statement and not defined herein shall have their respective meanings, as defined in the Code.

   1.1. **Approval of the Disclosure Statement by the Court:** The Disclosure Statement has been found to contain "adequate information," as described in Section 1125(f)(3) (A) of the Code by Order dated_____.

   1.2. **Holders of Claims:** Holders of Claims should read the Plan and the Disclosure Statement in their entirety before voting on the Plan. No solicitation of votes with respect to the Plan may be made except pursuant to the Plan and the Disclosure Statement. No statements or information concerning the Debtor in this Chapter 11 case (particularly as to results of operation, financial condition or with respect to distributions to be made under the Plan), or any of the assets and liabilities of the Debtor that is given for the purpose of soliciting acceptances or rejection of the Plan is authorized other than as set forth in this Disclosure Statement.

   1.3. **Vote:** Carefully review the Disclosure Statement and all Exhibits attached hereto before voting. Please indicate your acceptance or rejection of the Plan by voting in

favor of or against the Plan on an enclosed Ballot.  Pursuant to Local Rule 3018 and except as otherwise provided by order of the Court, all Ballots are to be sent directly to counsel for the Debtor and are not to be filed with the Clerk of the Court. **RETURN THE BALLOT, IN DUPLICATE IN TIME TO BE RECEIVED NO LATER THAN _____AT 5:00 P.M. MOUNTAIN DAYLIGHT SAVINGS TIME, THE VOTING DEADLINE, TO:**

Sidney J. Diamond, Esq.

Karla P. Martinez, Esq.

Diamond Law

3800 N. Mesa, Suite B-3

El Paso, Texas 79902

915-532-3327    Voice

915-532-3355    Fax

**sidney@sidneydiamond.com**

1.4. **Late Ballots:** Any Ballots received after the voting deadline may not be counted (unless otherwise ordered by the Court).  Ballots that are received after the Voting Deadline may not be used in connection with the Proponent's request for Confirmation of the Plan or any modification thereof, except to the extent allowed by the Court.

1.5. **Content of the Plan and Disclosure Statement:** The Disclosure Statement has been compiled by the Stoiber. The factual statements, projections, financial information, and other information contained in the Disclosure Statement have been taken from documents prepared by the Plan Proponent or others from information on file with the Court, including the Debtor's Schedules, Statement of Financial Affairs, and the Monthly Operating Reports.  Any information provided in the Disclosure Statement should not be relied upon unless such information has been independently verified.  Nothing contained in this Disclosure Statement shall have any preclusive effect against the Debtor (whether by waiver, admission, estoppel or otherwise) in any cause or proceeding which may exist or occur in the future. This Disclosure Statement shall not be construed or deemed to constitute an acceptance of fact or an admission by the Debtor with regard to any of the statements made herein, and all rights and remedies of the Debtor is expressly reserved in this regard. The Plan and Disclosure Statement contain statements which constitute the Plan Proponent's' view of certain facts.  All such disclosures should be read as her assertions.

1.6. **Facts Are as of the Filing Date of this Disclosure Statement:**   The statements contained in this Disclosure Statement are made as of the Filing Date hereof unless another time is specified herein, and neither delivery of the Plan and the Disclosure Statement nor any exercise of rights granted in connection with the Plan and the Disclosure Statement shall, under any circumstances, create an implication that there has been no change in the information set forth herein since the date of the Plan and the Disclosure Statement.

1.7. **Forward Looking Statements:** Certain information contained in this Disclosure Statement, by its nature, is forward-looking, contains estimates and assumptions which may prove to be inaccurate, and contains projections which may prove to be wrong, or which may be materially different from actual future results. Each Claimant should independently verify and consult counsel and/or accountant as to the effect of the Plan.

1.8. **Objections to Plan and Confirmation Hearing:** The Approval Order fixes _____, 2012 at __.Mountain Daylight Savings Time, in the Courtroom of the Honorable Christopher H. Mott, United States Bankruptcy Judge, located at United States Bankruptcy Court, 8525 Lockheed, and El Paso Texas, as the date, time, and place for a hearing on Confirmation of the Plan. The Approval Order also fixes _____, 2012, as the date by which all objections to Confirmation of the Plan must be filed with the Court and received by counsel for the Plan Proponent. The Plan Proponent will request Confirmation of the Plan at the Confirmation Hearing either by way consent of the Creditors pursuant to Section 1129(a) of the Code or by Cramdown pursuant to Section 1129(b) of the Code.

## SECTION 2 – DISCLAIMERS

2. **Disclaimers, Representations and Accuracy:** Stoiber provides the following disclaimers concerning this Disclosure Statement:

2.1. **No Judgment on the Merits of the Plan and the Disclosure Statement by the Court:** The approval of this Disclosure Statement by the Court is required by Section 1125 of the Code and does not constitute a judgment by the Court as to the desirability of the Plan, or as to the value or suitability of any consideration offered thereby.

2.2. **No Representations:** No representations concerning the Debtor or the Plan and Disclosure Statement are authorized by Debtor, other than as set forth in the Plan and the Disclosure Statement. Any representations or inducements made by any person to secure your vote which are other than those contained herein should not be relied upon, and such representations or inducements should be reported to counsel for the Debtor who shall deliver such information to the Court. The information contained herein and the Exhibits attached hereto have not been subject to a certified audit. The financial information contained herein has been provided by Stoiber. Stoiber maintains records internally and also currently utilizes outside accounting services to the extent indicated herein. Financial forecasts are based on various assumptions which are fully described in this Disclosure Statement. See "Section 5.1 – Future Income and Expenses under the Plan," page - 23and the Exhibits attached hereto.

2.3. **Materiality:** Stoiber has caused this Disclosure Statement to be prepared to disclose that information which, in her opinion is important and necessary to make an evaluation of the Plan. The material contained herein is intended solely for that

purpose and solely for the use of Creditors and other parties in interest of Stoiber and, accordingly, may not be relied upon for any purpose other than determination of how to vote on the Plan. In addition, the materials contained in this Disclosure Statement may not be sufficient for the formation of a judgment by any Creditor of the preferability of an alternative to the Plan. Stoiber has proposed the Plan and favors it.  Materials referring to alternatives to the Plan are limited by both partial considerations of space and opinion of Stoiber.

2.4. **Additional Information:** Certain materials contained in this Disclosure Statement are taken from other instruments or are digests of other instruments.  While Stoiber has made every effort to retain the meaning of the other instruments or portions transposed, Stoiber urges that any reliance on the contents of such other instruments should depend upon a complete review of the instruments themselves**.**

## SECTION 3 – CHATPER 11

3. **The Purpose of Chapter 11:  Business Reorganization and Formulation of a Plan:** The purposes of Chapter 11 of the Code are generally described in the following 25sections of this Disclosure Statement:

3.1. **Chapter 11:** Chapter 11 is the principal business reorganization chapter of the Code.  The commencement of a Chapter 11 case creates an "estate" compromised of all the legal and equitable interests of a Debtor. Sections 1101, 1107 and 1108 of the Code provide that a Debtor may remain in possession of her property and continue to operate her business as a "Debtor in Possession" ("DIP"). This Chapter 11 Case was commenced with the filing of a Voluntary Petition by Stoiber on September 2, 2011. Since the Filing Date, Stoiber has continued to carry on her regular business affairs under the supervision of the Court. Pursuant to Chapter 11 of the Code, unless the Court orders otherwise, the Debtor retains possession of her assets and continues to manage her own affairs as a Debtor in Possession.  Upon the filing of the petition for relief under the Code and until such time as the Debtor's case is closed or dismissed or a discharge is granted or denied, the Debtor and her assets remain protected by the automatic stay. The automatic stay allows the Debtor an opportunity to continue her business and to reorganize or achieve rehabilitation by proposing, obtaining confirmation of, and implementing a plan of reorganization under which the claims of creditors are paid in whole or in part and the retention of property by the Debtor are provided for**.**

3.2. **Plan of Reorganization:** Formulation of a plan of reorganization is the principal purpose of a Chapter 11 case.  The Plan is the vehicle for satisfying the holders of Claims against Stoiber. Under the Code, when soliciting acceptance or rejection of a plan of reorganization, the Debtor must transmit to the holders of claims a disclosure statement approved by the Court as containing "adequate information".

3.3. **Definition of Impairment:** Under Section 1124 of the Code, a Class of Claims or Interests is Impaired under a plan unless, with respect to each Claim or Interest:

(a)   Leaves unaltered the legal, equitable, and contractual rights of the Holder of such Claim or Interest; or

(b)   Notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim or Interest to receive accelerated payment of the Claim or Interest after the occurrence of a default;

(c)   Cures any such default that occurred before or after the commencement of the Case under the Code, other than a default of a kind specified in section 365(b)(2) of the Code;

(d)   Reinstates the maturity of such Claim or Interest as it existed before the default;

(e)   Compensates the holder of such Claim or Interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

(f)   Does not otherwise alter the legal, equitable, or contractual rights to which such Claim or Interest entitles the Holder of such Claim or Interest;

3.4.  **Confirmation Requirements and Procedures**: **PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS COMPLEX.** The following discussion is intended solely for the purpose of alerting readers about basic Confirmation issues, which they may wish to consider, as well as certain deadlines for filing Claims. The Plan Proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic. Many requirements must be met before the Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in "Good Faith", whether the Plan pays creditors at least as much as Creditors would receive in Chapter 7 liquidation, and whether this Plan is feasible. These requirements are not the only requirements for Confirmation.

In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plant he value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

3.5. **Confirmation Hearing:** At the Confirmation Hearing, the Court shall determine whether the requirements of Section 1129 of the Code have been satisfied, in which event the Court shall enter an Order Confirming the Plan.  To confirm the Plan, the Court must find that:

(a) The Plan complies with the applicable provisions of the Code.

(b)  The debtor has complied with the applicable provisions of the Code.

(c)  The Plan has been proposed in good faith and not by any means forbidden by law.

(d)  Any payment made or promised by the debtor or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with this Case or in connection with the Plan and incident to this Case, has been disclosed to the Court, and any such payment made before the Confirmation of the Plan is reasonable, or if such payment is to be fixed after Confirmation of the Plan, such payment is subject to the approval of the Court as reasonable.

(e)  The debtor has disclosed the identity and affiliations of any individual proposed to serve, after Confirmation of the Plan, as a director, officer, or voting agent of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under this Plan, and the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy, and the debtor has disclosed the identity of any insider that will be employed or retained by the Reorganized debtor, and the nature of any compensation for such insider.

(f)  Any governmental regulatory commission with jurisdiction, after Confirmation of the Plan, over the rates of the debtor has approved any rate change provided for in this, or such rate change is expressly conditioned on such approval.

(g)  With respect to each Impaired Class of Claims or Interests, either each holder of a Claim or Interest of such Class has accepted the Plan, or will receive or retain under this Plan on account of such Claim or Interest property of a value, as of the Effective Date of this Plan, that is not less than the

amount that such holder would so receive or retain if the debtor is liquidated on such date under Chapter 7 of the Code.

(h) Each Class of Claims or Interests has either accepted the Plan or is not impaired under the Plan.

(i) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the debtor must demonstrate at the Confirmation hearing that the Plan provides that Administrative Expenses and Priority Claims (other than tax claims) will be paid in full on the Effective Date, unless otherwise agreed to, and that Priority Tax Claims will receive on account of such claims deferred cash payments, over a period not exceeding five years after the date of the Order for Relief, unless otherwise agreed to, of a value, as of the Effective Date, equal to the allowed amount of such Claim.

(j) At least one class of claims that is Impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a claim of such class.

(k) Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

(l) All fees payable under 28 U.S.C. §1930, as determined by the Court at the Hearing on Confirmation of this Plan provides for the payment of all such fees on the Effective date of the plan.

(m) The Plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in Section 1114 of this Title, at the level established pursuant to subsection (e) (1) (B) or (g) of § 1114 of the Code, at any time prior to confirmation of the plan for the duration of the period the debtor has obligated himself to provide such benefits.

3.6. **The Plan and Disclosure Statement Meets Statutory Requirements:** The Debtor believes that the Plan satisfies all of the statutory requirements of Chapter 11 of the Code, that the Debtor has complied or will have complied with all of the

requirements of Chapter 11 and that the proposal of the Plan is made in good faith. The Debtor believes that the holders of all Claims Impaired under the Plan will receive payments under the Plan having a present value as of the Effective Date in amounts not less than the amounts likely to be received if the Debtor was liquidated in a case under Chapter 7 of the Code. The Debtor also believes that Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor, except for the liquidation of certain assets expressly contemplated by the Plan.

3.7. **Who May Object to Confirmation of the Plan:** Any party in interest may object to the Confirmation of the Plan, but as explained below, not everyone is entitled to vote to accept or reject the Plan.

3.8. **Who May Vote to Accept/Reject this Plan:** A Creditor or Interest Holder has a right to vote for or against the Plan if that Creditor or Interest Holder has a Claim which is both (1) allowed or allowed for voting purposes, and (2) classified in an impaired Class.

3.9. **What is an Allowed Claim/Interest:** As noted above, a Creditor must first have an Allowed Claim or Interest to have the right to vote. Generally, any Proof of Claim or Interest will be allowed, unless a party in interest brings an objection to the Claim or Interest. When an objection to a Claim is filed, the Creditor or Interest Holder holding the Claim cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the Claim or Interest for voting purposes.

3.10. **Bar Date: THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS JANUARY 10, 2012, FOR ALL CREDITORS EXCEPT A GOVERNMENTAL UNIT.** A Creditor or Interest Holder may have an Allowed Claim or Interest even if a Proof of Claim or Interest was not timely filed. A Claim is deemed allowed if (1) it is scheduled on the Schedules and such Claim is not scheduled as disputed, contingent, or unliquidated; and (2) no party in interest has objected to the claim. An Interest is deemed allowed if it is scheduled and no party in interest has objected to the Interest.

3.11. **What is an Impaired Claim/Interest:** As noted above, the Holder of an Allowed Claim or Interest only has the right to vote if it is in a Class that is impaired under the Plan. A Class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that Class. For example, where a Creditor receives payment terms or other rates different than those in the original agreement, that Creditor is impaired. Which Classes of Claims or Interest are Impaired are set forth in Section 8 of the Disclosure Statement.

3.12. **Who is Not Entitled to Vote:** The following four types of Claims are not entitled to vote: (1) Claims that have been disallowed; (2) Claims in Unimpaired Classes; (3) Claims entitled to priority pursuant to Code Sections 507(a) (1), (a) (2), and (a) (8); and (4) Claims in Classes that do not receive or retain any value under the Plan.

Claims in unimpaired Classes are not entitled to vote because such Classes are deemed to have accepted the Plan. Claims entitled to Priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8) are not entitled to vote because such Claims are not placed in Classes and they are required to receive certain treatment specified by the Code. As explained in Section 8, hereof Claims in the foregoing categories have been classified for convenience purposes only. Claims in Classes that do not receive or retain any value under the Plan do not vote because such Classes are deemed to have rejected the Plan**. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.**

3.13. **Who Can Vote in More Than One Class:** A Creditor whose Claim has been allowed in part as a Secured Claim and in part as an Unsecured Claim is entitled to accept or reject a plan in both capacities by casting one Ballot for the Unsecured Claim and by casting one Ballot for the Secured Claim.

3.14. **Votes Necessary to Confirm the Plan:** In this case the Court cannot confirm the Plan unless (1) all impaired classes have voted to accept the Plan, or (2) at least one Impaired Class has accepted the Plan without counting the votes of any Insiders within that Class, and the Plan is eligible to be confirmed by "Cramdown" on non-accepting Classes, as discussed in Section 3.17.

3.15. **Votes Necessary for a Class to Accept the Plan:** A Class of Claims is considered to have accepted the Plan when more than one-half (½) in number and at least two-thirds (2/3) in dollar amount of the Claims which actually voted, voted in favor of the Plan. A Class of Interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the Interest Holders of such Class which actually voted, voted to accept the Plan.

3.16. **Treatment of Non-Accepting Classes:** As noted above, even if all impaired Classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the non-accepting Classes are treated in the manner required by the Code. The process by which non-accepting Classes are forced to be bound by the terms of the Plan is commonly referred to as "Cramdown".The Code allows the Plan to be "Crammed Down" on non-accepting Classes of Claims or Interests if it meets all consensual requirements except the voting requirements of Section 1129(a) (8) of the Code and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each Impaired Class that has not voted to accept the Plan as referred to in 11 U.S.C. §1129(b) of the Code and applicable case law.

3.17. **Cramdown:** In the event that any Impaired Class of Claims does not accept the Plan, the Court may still confirm the s Plan at the request of the Debtor if, as to each Impaired Class which has not accepted, the Plan, it "does not discriminate unfairly" and is "fair and equitable." A Plan does not discriminate unfairly within the meaning of the Code if no Class receives more than it is legally entitled to receive

for its Claims or Interests. "Fair and equitable" has different meanings for Secured Claims, Unsecured Claims, and Interests.

3.18. **With Respect to a Secured Claim, "Fair and Equitable" Means Either:** (I) the Impaired Secured Creditor retains its lien to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value as of the Effective Date at least equal to the value of such Creditors' interest in the property securing its lien; or (ii) property subject to the lien of the impaired Secured Creditor is sold free and clear of that lien, with the lien attaching to the proceeds of the sale, and such lien proceeds must be treated in accordance with clauses (III) or (IV) hereof; or (iii) the Impaired Secured Creditor realizes the "indubitable equivalent" of its claim under the Plan.

3.19. **With respect to an Unsecured Claim "Fair and Equitable" Means Either:** (I) each Impaired Unsecured Creditor receives or retains property of a value equal to the amount of its Allowed Claim; or (ii) the Holders of Claims that are junior to the Claims of the dissenting Class will not receive any property under the Plan. There are certain exceptions to this requirement for individuals and other exceptions established by case law. In the event one or more Classes of Impaired Claims rejects the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting Impaired Class of Claims. In the event one or more Classes of Impaired Claims reject the Plan, the Debtor request that the Court confirm the Plan through a Cramdown of dissenting Impaired Classes at the Confirmation Hearing without additional notice to Creditors.

3.20. **Effect of Confirmation:** The confirmed Plan binds the Debtor except as otherwise provided in the Plan or the Order Confirming the Plan. The Plan's confirmation further vests all property of the Estate in the Debtor except as provided by Sections 1141(d) (2) and (d) (3), and except as otherwise provided in the Plan or in the Order Confirming the Plan. After confirmation, the property dealt with by the Plan is free and clear of all claims and interest of creditors and equity security holders. In the case of an individual unless after notice and hearing the court grants a discharge on completion of all payments under the Plan. At any time after the confirmation of the Plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the Plan if the value of the property is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under Chapter 7 on such date, a modification is not practical, or Section 1141(5) (c) grants a discharge.

## SECTION 4- FINANCIAL PICTURE OF THE DEBTOR
### The Past

4. **History And Events Leading To The Filing Of This Chapter 11 Case:** The following Sections contain a brief history of the Debtor and the events leading to the filing of this Chapter 11 Case:

4.1. **History:** Between the years 1998 and 2008 the Stoiber purchased several multitenant buildings. In 2000 Stoiber began to work with a contractor to make improvements on the buildings located at 189 S. Collingsworth, 1014 Myrtle, and 1015 Myrtle. The contractor told her that each building would need approximately $250,000.00 of improvements. Stoiber could not find a bank that would lend her that kind of money because the buildings were built between 1904 and 1914. She then decided to apply with the Community Development Program that the city has. After the City ran the numbers they decided that each project would cost approximately $1,200,000.00. Stoiber told them that she would not be able to pay back those loans and that she found it to be an excessive amount.  She did not take the loans, however, she was consistently being pressured to make the improvements to the buildings and one building was even condemned. Stoiber had no option but to borrow the money. She began having problems as soon as the buildings were done because the city had not taken into consideration of the increase in property taxes, vacancy percentages and other expenses that were increasing. They promised her, however, that they would work with her.  The contractor who was hired to make the renovations never finished the project. Stoiber sued the contractor and was able to obtain a judgment; however, she was never paid. Currently the occupancy rate is at about eighty five percent.

4.2. **Events Leading To This Chapter 11 Case:**  After the first year that the buildings were open Stoiber realized that due to the proximity of the homeless shelter and the high crime rate the occupancy rate was not going to be higher than 50 percent. Stoiber contacted the city and explained the issues that she was having and they told her not to worry that they would work with her. Stoiber was not making enough money from the rents collected to pay on the notes due and on the property taxes so after being advised by an accountant at the city they agreed that she would skip three monthly note payments to pay off the property taxes. Stoiber struggled forward for three years but it became impossible as the property taxes and expenses continued to increase.

In 2006 there was a lot of damage done to the buildings due to Hurricane Katrina. The roof of one building collapsed since it was never finished properly and another building was completely flooded. Stoiber was forced to take out a loan with the US Small Business Administration.

The city at one point changed payment processing companies and they lost Eighty Thousand dollars 00/100 ($80,000) worth of payments. Stoiber refused to make more payments until that money was found. A year later they were able to retrieve those funds. During this time the situation with the buildings became worse as crime was at an increase. Stoiber had to incur the cost of a security guard in order to attempt to mitigate the situation.

Stoiber made several attempts to renogiate her loans with the city but was unsuccessful. Stoiber continued to attempt to catch up the loans but has been unable

to. She has continued to pay extra on one of the notes which has made it difficult to keep her head above water.  Stoiber has been working hard to keep the properties in good shape and to clean up the crime in that area. There has been vast improvement since Stoiber first began this project.

## The Chapter 11 Case

4.3. **Operations In Chapter 11:** Stoiber has continued to manage the buildings by collecting rents and overseeing the operations.

4.4. **Type of Apartment Complexes Operated by the Debtor:** Twenty percent of the Units are considered Section  HUD Housing. Many of Stoiber's tenants are students from Mexico who rent here during the school semester.

4.5. **Maintenance and Major Repairs:** Since the date of filing Stoiber had to replace all of the Air Conditioning units to the building located at 189 S. Collingsworth St.

4.6. **Economic Conditions Which Have Impacted Maria G. Stoiber:** Generally poor macroeconomic conditions have had an impact on rental income. However, the difficulty in people obtaining mortgages, especially for starter homes, has had the positive impact of keeping vacancies low allowing the Debtor to weather the current economic downturn. Stoiber believes that she is obtaining market rates for the properties he owns and manages.

4.7. **Monthly Operation Reports:** The following Table sets forth a summary of the Monthly Operating Reports filed by Maria G. Stoiber in this Chapter 11 Case:

| SUMMARY OF MONTHLY OPERATING REPORTS FOR MARIA GABRIELA STOIBER | | | | | | | |
|---|---|---|---|---|---|---|---|
| | **Sept 2011** | **Oct 2011** | **Nov 2011** | **Dec 2011** | **Jan 2012** | **Feb 2012** | **Filing to Date** |
| Cash beginning of Month | $     0.00 | $ 14,402.00 | $ 28,234.00 | $ 24,628.00 | $ 29,203.00 | $ 32,511.00 | |
| Receipts | 27,447.00 | 31,043.00 | 22,802.00 | 28,965.00 | 27,624.00 | 27,996.00 | 166,227.00 |
| Total Disbursements from Operations | 12,545.00 | 16,661.00 | 25,308.00 | 24,390.00 | 22,347.00 | 24,486.00 | 125,737.00 |
| Total Disbursements | 13,045.00 | 17,561.00 | 26,408.00 | 24,390.00 | 24,316.00 | 26,546.00 | 132,266.00 |
| Net Cash Flow | 14,402.00 | 13,832.00 | (3,606.00) | 4,575.00 | 3,308.00 | 1,450.00 | 33,961.00 |
| Cash end of Month | 14,402.00 | 28,234.00 | 24,628.00 | 29,203.00 | 32,511.00 | 33,961.00 | |

4.8. **Accounting Method Used and Source of Financial Information:** The Summary of the Debtor's Monthly Operating Reports on file with the Court has been prepared

on a cash basis. Stoiber has utilized generally accepted accounting principles, consistently applied, in presenting financial historical data, other than the summary of monthly operating reports. Financial forecasts are based upon current data from results of operations since the Petition Date. Forecasts were prepared by the Debtor. The forecasts were compiled by Sheldon Goping, Certified Public Accountant. Goping has not expressed an opinion as to either the forecasts or other financial data set forth in this Disclosure Statement, except to the extent indicated.[1] No person is entitled to rely upon the report of such accountant except for the purpose of analyzing the Plan of Reorganization and the Disclosure Statement and then only for the purpose of deciding whether to accept or reject the Plan. See Section 5 - "Future Income and Expenses under the Plan", page 23.

## SECTION 5- BASIS OF THE PLAN

5. **Basis Of The Plan:** Attached to the Plan and Disclosure Statement as Exhibits are the forecasts of future income and expenses, and sources and uses of funds of Stoiber as follows:

    5.1. :**Future Income and Expenses Under the Plan**:

      (a)  Exhibit "A":   Annual Statement of Operations For Ten (5) Years.

      (b)  Exhibit "B":  Projected Annual Statement of Cash Flows for Ten (5) Years.

      (c)  Exhibit "C":   Monthly Statement of Operation for One (1) Year

      (d)  Exhibit "D":   Projected Monthly Statement of Cash Flows For Year One (1).

      (e)   Exhibit "E":   Pro-forma Balance Sheet Of Maria Gabriela Stoiber

    5.2. **Future Management and Compensation:** Stoiber will continue to manage her properties and continue to receive $1,600.00 a month during the life of the Plan subject to annual cost of living adjustments as published in the Consumers Price Index (CPI) as published by the Department of Labor.

    5.3. **Future Income and Expenses of Stoiber:** Attached hereto as Exhibit "F" is the monthly income of Stoiber and her monthly expenses.

## SECTION 6 – ANALYSIS AND VALUATION OF PROPERTY

[1] See Exhibit "I" for the assumptions used in preparing the forecasts.

6. **Analysis and Valuation of Property:** The following four (4) Subsections of this Disclosure Statement set forth the Debtor's Property, the value of such Property and the Liens, if any, against such Property, exclusive of property which Stoiber has claimed as exempt pursuant to Section 522 of the Code. The first Section arrives at the total value of the Debtor's Property, net of Liens, but before costs of disposition of assets or costs of administration of this case. Section 20 - Liquidation Analysis of the Debtor's Property, Page 26 contains an analysis of what would be realized by Creditors if the Debtor's case were converted to one under Chapter 7 of the Code and the property liquidated. In order to understand the Debtor's assets and what would be realized from a sale of those assets, both sections must be read.

6.1. **Real Property of the Debtor:** The following is a list of all of the properties owned by the Debtor, market value of the properties, and the liens against such properties.[2] The property values are the opinion of Maria Gabriela Stoiber, using the El Paso Central Appraisal District.

| SUMMARY OF MARIA GABRIELA STOIBER'S REAL PROPERTY | | | | |
|---|---|---|---|---|
| Property | Value | Method | Lien(s) | Net Equity |
| 1014 Myrtle | $  338,238.00 | CAD | $  624,312.26 | $          0.00 |
| 1015 Myrtle | 371,735.00 | CAD | 703,137.91 | 0.00 |
| 189 S. Collingsworth | 494,683.00 | CAD | 624,500.00 | 129,816.32 |
| 202-204 W. California | 84,662.00 | CAD | 76,862.07 | 7,799.93 |
| 401 Florence St. | 177,617.00 | CAD | 139,806.51 | 37,810.49 |
| 12532 Tierra China | 156,500.00 | CAD | 127,000.00 | $29,500.00 |
| 917 Ochoa St. | 333,313.00 | CAD | 447,894.00 | 0.00 |
| 14740 Marvin Lane | | | $326.14 | |
| Timeshare – Mayan Palace | 1.00 | | | |
| **TOTALS** | 1,956,749.00 | | 2,743,512.00 | 204,926.74 |

6.2. **Exempt Tangible Personal Property of Maria Gabriela Stoiber:** The following Table sets forth the Debtor's tangible personal property as valued by the Debtor as of the Filing Date:

| SUMMARY OF MARIA GABRIELA STOIBER'S EXEMPT TANGIBLE PERSONAL PROPERTY[3] | | | | |
|---|---|---|---|---|
| Type | Value | Method | Lien(s) | Net Equity |
| Household Goods and Furnishings | $ 4,000.00 | | | $ 4,000.00 |
| Wearing Apparel and Costume Jewelry | 500.00 | | | 500.00 |
| 1998 Dodge Ram 1500 Pickup | 1,000.00 | | | 1,000.00 |
| **TOTALS** | $5,500.00 | | | $5,500.00 |

6.3. **Intangible Personal Property of Maria Gabriela Stoiber:** The following Table sets forth the Debtor's intangible personal property as valued by the Debtor as of the Filing Date:

| SUMMARY OF THE MARIA GABRIELA STOIBER'S INTANGIBLE PERSONALPROPERTY | | | | |
|---|---|---|---|---|
| Type | Value | Method | Lien(s) | Net Equity |
| Share Account First Light Federal | 1,173.00 | | | $1,173.00 |
| Money Market Account First Light Federal | 17,372.77 | | | 17,372.77 |
| Share Account First Light Federal | 10.53 | | | 10.53 |
| Checking Account El Paso Employees Credit Union | 21.21 | | | 21.21 |
| Checking | 6,923.06 | | | 6,923.06 |

---

[3] Debtor only has exempt tangible property.

DEBTOR'S DISCLOSURE STATEMENT- Page 15

| | | |
|---|---|---|
| Account El Paso Employees Credit Union | | |
| Checking Account BBVA Compass | 18,814.00 | 18,814.00 |
| El Paso ABA Management, LLC | 1.00 | 1.00 |
| ABA Investments,LLC | 1.00 | 1.00 |
| A.B.A. Properties, LLC | 1.00 | |
| TOTALS | 44,317.57 | 44,317.57 |

6.4. **Liquidation Value of the Maria Gabriela Stoiber's Assets:** Based upon the presentation in the three preceding Subsections of the Disclosure Statement, Stoiber's Estate has a value of $0.00 after deducting exempt property and other administrative expenses estimated to be $ 15,000.00.  However, the following chart assumes that the properties could be liquidated at full value, which would not be the case if the case were converted to one under Chapter 7. If the case were converted to one under Chapter 7 the Chapter 7 trustee would not have the ability to make the regular monthly mortgage payments, and therefore, it is highly likely that the secured parties would seek relief from stay and they will obtain orders granting such relief.   If the case were converted to one under Chapter 7 the Trustee would liquidate the properties as quickly as possible which would require significant discounts or if not liquidated quickly it is assumed that the secured creditors would seek relief from stay, and if granted there would be no funds to distribute to unsecured creditors. If the properties were liquidated significant Chapter 7 expenses would be incurred both to the Chapter 7 Trustee and other such as real estate management fee, real estate sales commissions, and real estate closing costs making the realization of any funds to pay unsecured creditors questionable at best. Based upon the Debtor's opinion unsecured creditors would probably realize nothing if the case were converted to one under Chapter 7. See - Liquidation Analysis of the Debtor's Property," page 26.  The following Table set forth the above computations:

| SUMMARY OF ALL PROPERTY | | | | |
|---|---|---|---|---|
| Type | Value | Lien(s) | Net Equity | Expenses |
| Intangible | $ 44,317.57 | | $    44,317.57 | |
| Real Property | 1,956,749.00 | 2,743,512.00 | 0.00 | |
| Totals | | 2,743,512.00 | 4,379.00 | |
| Ch. 11 Admin | | | | 20,000.00 |

Ex.

| | |
|---|---|
| **Gross Value of Maria Gabriela Stoiber's Estate:** | **0.00** |

## SECTION 7 – CLASSIFICATION OF CLAIMS AND INTERESTS

7.  **Classification of Claims Under this Plan:** The Plan establishes Five (4) classes that deal with Claims of Creditors and the retained interest in property by the Debtor. The following Sections summarize the claim classification that the Debtor has utilized in formulating this Plan.

    7.1.  **Class 1 – Administrative Expenses:** Class 1 is divided into 2 Sub-Classes which are not entitled to vote.

        (a)  Class 1(a) – Professional Fees: Class 1(a) consists of all Claims arising under Sections 330 and 503 of the Code, as the same may be allowed and ordered paid by the Court in the approximate future amount of $ 15,000.00. See "Section 9.2 – Class 1(a) – Professional fees of Maria Gabriela Stoiber," Page 32.

        (b)  Class 1(b) – Costs of Administration: Class 1(b) consists of all costs and expenses of administration, except Claims arising under Sections 330 and 503 of the Code, as the same may be allowed and ordered paid by the Court, including, but not limited to, the costs of reproduction and mailing of this Plan, the fees due to the United States Trustee, and any post-petition operating expenses which are due and unpaid at the date of Confirmation.  See "Section 9.2 – Class 1(b) Costs of Administration," Page 32.

    7.2.  **Class 2 – Unsecured Claims:**  Class 2 consists of all allowed Unsecured Claims including Creditors whose Claims arise out of the rejection of executory contracts and unexpired leases and the deficiency Claims of Creditors who were previously secured, and whose Claims have been determined to be unsecured in whole or in part, pursuant to Section 506(a) or Section 1111(b) of the Code, or by agreement between the Secured Creditor and the Debtor. See "Section 9.5- Class 3 Unsecured Creditors" Page 26.

    7.3.  **Class 3 – Secured Claims:** [4]Class 3 consists of all Secured Claims. Class 3 is divided into Classes, each of which each class shall vote separately: See "Section 9.6 – Class 3 Secured Creditors" Page 27.

_____

[4]Unless otherwise indicated all properties are assumed to be located in El Paso, El Paso County, Texas.

(a) <u>Class 3(a) San Francisco Historic District Ltd</u>: The Secured Claim of San Francisco Historic District Ltd as of the filing date in the approximate amount of One Hundred Thirty Nine Thousand Eight Hundred Six Dollars and 51/100 ($139,806.51) in principal plus 7% interest, as of the Filing Date, secured by a first lien on the property at 401 Florence.

(b) <u>Class 3(b) –The Bank of New York Mellon</u>: The Secured Claim of Bank of Internet as of the filing date in the approximate amount of Three Hundred Twenty Six Dollars and 14/100 (326.14), in principal plus interest, as of the Filing Date, secured by a first lien on the property at 14740 Marvin Lane.

(c) <u>Class 3(c) – City of El Paso</u>: The Secured Claim of the City of El Paso as of the filing date in the approximate amount of Five Hundred Thirty Nine Four Hundred Four Dollars and 85/100 (539,404.85) in principal plus 3% interest, as of the Filing Date, secured by the first lien on the property located at 1014 Myrtle.

(d) <u>Class 3(d) – City of El Paso</u>: The Secured Claim of the City of El Paso as of the filing date in the approximate amount of Six Hundred Eighteen Thousand Two Hundred Thirty Dollars and 48/100 ($618,230.48) in principal plus 3% interest, as of the Filing Date, secured by a first lien on the property located at 1015 Myrtle Ave.

(e) <u>Class 3(e) – City of El Paso</u>: The Secured Claim of the City of El Paso as of the filing date in the approximate amount of Four Hundred Ninety Four Thousand Six Hundred Eighty Three Dollars and 68/100($494,683.68) in principal plus 0% interest, as of the Filing Date, secured by a first lien on the property located at 189 S. Collingsworth.

(f) <u>Class 3(f) – City of El Paso</u>: The Secured Claim of the City of El Paso as of the filing date in the approximate amount of Seventy Six Thousand Eight Hundred Sixty Two Dollars and 07/100 ($76,862.07) in principal plus 0%  interest, as of the Filing Date, secured by the property located at 202-204 W. California.

(g) <u>Class 3(g) – City of El Paso</u>: The Secured Claim of the City of El Paso as of the filing date in the approximate amount of Four Hundred Forty Seven Thousand Eight Hundred Ninety Four Dollars and 18/100 ($447,894.18) in principal plus 0%

interest, as of the Filing Date, secured by first liens on the properties located at 917 Ochoa St.

(h) <u>Class 3(h) – US Small Business Administration</u>: The Secured Claim of US Small Business Administration as of the filing date in the approximate amount of  Eight Four Thousand Nine Hundred Seven dollars and 43/100 ($ 84,907.43) in principal plus  4% interest,  as of the Filing Date, secured by a second lien on the properties located at 1014 and 1015 Myrtle.

(i) <u>Class 3(j) – City of El Paso Property Taxes</u>: The Secured Claim of the City of El Paso for property taxes as of the filing date in the approximate amount of  Forty Four Thousand Two Hundred Forty Five dollars and 53/100 ($44,245.53), as of the Filing Date, secured by first lien on several properties.

7.4. **Class 4 – Retained Interest in Property by Stoiber:** Stoiber will retain her interest in all properties.

## SECTION 8 – IMPAIRED CLASSES AND CLAIMS AND INTERESTS

8. **Impaired Classes of Claims and Interest: Classes Entitled to Vote for Acceptance or Rejection:** Classes 1and 2 have been designated Classes for convenience of reference only and are not required to be either classified or designated as Impaired pursuant to Section 1123 (a) (1) and (2) of the Code, and are not entitled to vote for acceptance or rejection of the Plan.  Classes 2 and 3(a), 3(c), 3(d), 3(e), 3(f), 3(g), 3(h), 3(i) are Impaired under the Plan, as that term is defined in Section 1124 of the Code.

8.1. **"Best Interest of Creditors Test":** Stoiber asserts that the Plan meets the requirements of Section 1129(a)(7) of the Code which is referred to as the Best Interest of Creditors Test, which reads as follows:

"With respect to each Impaired Class of Claim or Interest (i) Each holder of a Claim or an Interest of such Class (a) has accepted this Plan; or, (b) will received or retain under this Plan on account of such Claims or Interest, Property of a value, as of the Effective date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under Chapter 7 of the Code on such date; or (ii) if Section 1111(b)(2) of the Code applies to the Claims of such Class, each holder of a Claim of such Class will received or retain under the Plan  on account of such Claim, Property of a value, as of Effective date of

this Plan , that is not less than the value of such holder's interest in the estate's interest in the Property that secures such Claims."

This Disclosure Statement contains: (i) A detailed analysis and valuation of the Properties of the Estate; (ii) A detailed liquidation analysis of such Properties; and (iii) What would be realized by the holders of Claims and Interests if the Case of Maria Gabriela Stoiber was converted to Chapter 7 of the Code and in the Properties liquidated.

8.2. **This Plan  Does Not Discriminate Unfairly:**    If Confirmation is sought pursuant to Section 1129(b) of the Code, Stoiber asserts that the Plan does not "Discriminate Unfairly" with  respect to each Class of Claims and each Class of Interest Impaired, pursuant to the requirements of Section 1129 (b)(1) of the Code.

8.3. **This Plan Does Not Discriminate Unfairly: This Plan  is Fair and Equitable:** If Confirmation is sought pursuant to Section 1129(b) of the Code, Stoiber asserts the Plan  is "Fair and Equitable"  with respect to each Class of Claims and each Class of Interest Impaired, pursuant to the requirements of Section 1129(b)(1) of the Code.

## SECTION 9 – TREATMENT OF CLAIMS AND INTEREST

9. **Distribution To Creditors and Interests Under the Plan:** The following Sections  sets forth the distributions to Creditors and Retained Interest in Property by Stoiber:

9.1. **Summary of Plan Payments:** The Debtor has prepared Exhibit "G" which sets forth the estimated payments to be made under the plan to creditors and retained interest in property. See also Exhibit "A" of the Plan (Note: In some cases, payments are estimated. A complete reading of this Plan of Reorganization and this Disclosure Statement is required).

### CLASSIFIED CLAIMS
#### Class 1 – Administrative Claims

9.2. **Class 1 – Administrative Claims:**

(a) Class 1(a) – Payment of Professional Fees:  Any Administrative expense which has not been approved by the Court by the Effective Date will be estimated by the Debtor and an appropriate reserve maintained therefore, until the amount thereof has been determined by the Court. Professional fees will be paid at the rate 24 equal monthly installments for an amount totaling approximately $15,000.00 beginning on the first day of the first full month following the Effective Date.

(b) <u>Court Costs</u>: Any Court fees or Court Reporters' fees which have not been paid.  The Debtor does not know of any such fees, but if such fees do exist, they will not be significant.

(c) <u>Cost of Distribution and Mailing of Plan of Reorganization and Disclosure Statement</u>: The cost of reproduction and mailing of the Plan and Disclosure Statement to the Creditors and other parties in interest in this case. These Expenses have not been determined.

(d) <u>Class 1(b) Cost of Administration</u>: Administrative Expenses, including the fees and expenses of the United States Trustee, incurred in the ordinary course of business shall be paid in accordance with the terms upon which credit was extended or in accordance with any subsequent amendment of the original credit terms as agreed to by the Administrative Expense Claimant and the Debtor.  Administrative Expenses incurred, other than in the ordinary course of business, shall be paid, to the extent that they have not already been paid, in full, on the fifteenth (15th) day of the first full month following the Effective Date. Any such Administrative Expense which has not been approved by the Court by the Effective Date will be estimated by the Debtor and an appropriate reserve maintained therefore, until the amount thereof has been determined by the Court, and paid promptly thereafter.

<b>Class 2 – Unsecured Claims</b>

9.3.  **Class 2 – Unsecured Claims:** Claims in this Class 2 shall be paid 10% of their Allowed Claims in sixty (60) equal monthly installments pro-rata. Monthly distributions will begin the first day of the first day of the first full month following the Effective Date.

| CLASS 3 - UNSECURED CLAIMS OF MARIA GABRIELA STOIBER | | |
|---|---|---|
| **Name of Creditor** | **Proof of Claim** | **Amount Scheduled** |
| Automatic Laundry | | $1.00 |
| Capital One | $202.29 | $202.29 |
| CFI Security Inc. | | 1.00 |
| DSNBC Macys | | 84.00 |
| Entertainment Extra | | 1.00 |
| Golden Shores Vacation Club | | 1.00 |

| | | |
|---|---|---|
| Mayan Palace | | 1.00 |
| Midland Credit Management[5] | | 1,099.47 |
| Steven C. James | | 358.14 |
| Timepayment Corp | | 4,598.00 |
| American Info Source/T-Mobile[6] | $410.08 | $0.00 |
| **TOTAL** | **$612.37** | **$5,247.43** |

## Class 3 - Secured Claims

9.4. **Class 3(a) – San Francisco Historic District:** The following terms, conditions and method of payment shall apply to the Allowed Secured Claim of San Francisco Historic District Ltd. The collateral securing the Claim of San Francisco Historic District, Ltd shall remain in Debtor's possession:

(a) Amount of Secured Claim: The Secured Claim of San Francisco Historic District Ltd as of the filing date in the approximate amount of One Hundred Thirty Nine Thousand Eight Hundred Six Dollars and 51/100 ($139,806.51) in principal plus 7% interest, as of the Filing Date, secured by a first lien on the property at 401 Florence.

(b) Credit For Adequate Protection Payments: The adequate protection payments made to San Francisco Historic District, Ltd will be applied to interest, principal and where appropriate escrow for taxes and insurance. Interest from the Petition Date to the Effective Date shall accrue on the outstanding principal balance at the non-default contract rate.

(c) Interest Rate: The interest rate shall remain 7%.

(d) Term: The Secured Claim will be paid on the basis of a 30 year amortization schedule with interest as stated above beginning the first day of the first full month following the Effective Date with a like payment on the first of each month thereafter until paid in full, with a 10 year call.

---

[5] This claim will be objected to if one if filed.
[6] Debtor will object to this claim. She currently has T-Mobile and is current on her bill.

(e)  <u>Lien Retention:</u> The Claimant shall retain its Lien.

(f)  <u>Accounting:</u> At any time within one hundred and twenty (120) days of the Effective Date, at the request of the Debtor the Claimant shall furnish an accounting to the Debtor of all funds received since the inception of the debt and the application of those proceeds to principal, interest or other charges.

(g)  <u>Loan Documents</u>: In the event a dispute arises concerning the Claim of San Francisco Historic District, Ltd the loan documents between of San Francisco Historic District, Ltd and the Debtor shall control.

(h)  <u>Prepayment Penalties</u>: There will be no prepayment penalties.

(i)  <u>Insurance Proceed:</u> Any proceeds received from the Property Insurance coverage due to damage to the property will be used to repair the property. Any excess insurance proceeds shall be paid to of San Francisco Historic District, Ltd on its claim.

9.5.  **Class 3(b) – The Bank of New York Mellon**: The following terms, conditions and method of payment shall apply to the Allowed Secured Claim of The Bank of New York Mellon.   The collateral securing the Claim of The Bank of New York Mellon shall remain in Debtor's possession.

(a)  <u>Amount of Secured Claim</u>: The Secured Claim of Bank of Internet as of the filing date in the approximate amount of Three Hundred Twenty Six Dollars and 14/100 (326.14), in principal plus interest, as of the Filing Date, secured by a first lien on the property at 14740 Marvin Lane.

(b)  <u>Credit for Payments</u>: The adequate protection payments made to The Bank of New York Mellon will be applied to interest, principal and where appropriate taxes. Interest from the Petition Date to the Effective Date shall accrue on the outstanding principal balance at the non-default contract rate.

(c)  <u>Interest Rate</u>: The interest rate shall remain at the contract rate.

(d)    <u>Term</u>: This Claim will be paid in full on the first day of the first full month following the effective date.

(e)    <u>Lien Retention:</u> The Claimant shall retain its Lien.

(f)    <u>Accounting:</u> At any time within one hundred and twenty (120) days of the Effective Date, at the request of the Debtor the Claimant shall furnish an accounting to the Debtor of all funds received since the inception of the debt and the application of those proceeds to principal, interest or other charges.

(g)    <u>Loan Documents</u>: In the event a dispute arises concerning the Claim of The Bank of New York Mellon the loan documents between The Bank of New York Mellon and the Debtor shall control.

(h)    <u>Prepayment Penalties:</u> There will be no prepayment penalties.

9.6. **Class 3(c) City of El Paso:** The following terms, conditions and method of payment shall apply to the Allowed Secured Claim of City of El Paso. The collateral securing the Claim of City of El Paso shall remain in Debtor's possession.

(a)    <u>Amount of Secured Claim:</u> The Secured Claim of the City of El Paso as of the filing date in the approximate amount of Five Hundred Thirty Nine Four Hundred Four Dollars and 85/100 (539,404.85) in principal plus 3% interest, as of the Filing Date, secured by the first lien on the property located at 1014 Myrtle.[7]

(b)    <u>Credit for Adequate Protection Payments</u>: The adequate protection payments made will be applied to interest, principal and where appropriate taxes. Interest from the Petition Date to the Effective Date shall accrue on the outstanding principal balance at the non-default contract rate.

(c)    <u>Interest Rate:</u> The interest rate shall remain at 3%.

---

[7] A Motion to Value will be filed if the motion is granted this claim will be bifurcated and $338,238.00 will be treated as a secured claim and the amount of $201,166.85 will be paid as per the unsecured class.

(d) <u>Term:</u> The Secured Claim will be paid on the basis of a 30 year amortization schedule with interest as stated above beginning the first day of the first full month following the Effective Date with a like payment on the first of each month thereafter until paid in full, with a 10 year call.

(e) <u>Lien Retention:</u> The Claimant shall retain its Lien.

(f) <u>Accounting</u>: At any time within one hundred and twenty (120) days of the Effective Date, at the request of the Debtor the Claimant shall furnish an accounting to the Debtor of all funds received since the inception of the debt and the application of those proceeds to principal, interest or other charges.

(g) <u>Loan Documents</u>: In the event a dispute arises concerning the Claim of City of El Paso the loan documents between City of El Paso and the Debtor shall control.

(h) <u>Prepayment Penalties:</u> There will be no prepayment penalties.

(i) <u>Insurance Proceed:</u> Any proceeds received from the Property Insurance for coverage due to damage to the property will be used to repair the property.

9.7. **Class 3(d) – City of El Paso:** The following terms, conditions and method of payment shall apply to the Allowed Secured Claim of City of El Paso. The collateral securing the Claim of City of El Paso shall remain in Debtor's possession.

(a) <u>Amount of Secured Claim:</u> The Secured Claim of the City of El Paso as of the filing date in the approximate amount of Six Hundred Eighteen Thousand Two Hundred Thirty Dollars and 48/100 ($618,230.48) in principal plus 3% interest, as of the Filing Date, secured by a first lien on the property located at 1015 Myrtle Ave.

(b) <u>Credit for Adequate Protection Payments:</u> The adequate protection payments made will be applied to interest, principal and where

appropriate taxes. Interest from the Petition Date to the Effective Date shall accrue on the outstanding principal balance at the non-default contract rate.

(c) <u>Interest Rate:</u>  The interest rate shall remain at 3%.

(d) <u>Term:</u> The Secured Claim will be paid on the basis of a 30 year amortization schedule with interest as stated above beginning the first day of the first full month following the Effective Date with a like payment on the first of each month thereafter until paid in full, with a 10 year call.[8]

(e) <u>Lien Retention:</u> The Claimant shall retain its Lien.

(f) <u>Accounting:</u> At any time within one hundred and twenty (120) days of the Effective Date, at the request of the Debtor the Claimant shall furnish an accounting to the Debtor of all funds received since the inception of the debt and the application of those proceeds to principal, interest or other charges.

(g) <u>Loan Documents:</u> In the event a dispute arises concerning the Claim of City of El Paso the loan documents between City of El Paso and the Debtor shall control.

(h) <u>Prepayment Penalties</u>: There will be no prepayment penalties.

(i) <u>Insurance Proceed:</u> Any proceeds received from the Property Insurance coverage due to damage to the property will be used to repair the property.

9.8. **Class 3(e) – The City of El Paso:** The following terms, conditions and method of payment shall apply to the Allowed Secured Claim of City of El Paso. The collateral securing the Claim of City of El Paso shall remain in Debtor's possession.

(a) <u>Amount of Secured Claim:</u> The Secured Claim of the City of El Paso as of the filing date in the approximate amount of Four Hundred Ninety Four

---

[8] A Motion to Value will be filed if the motion is granted this claim will be bifurcated and $371,735.00 will be treated as a secured claim and the amount of $244,495.00 will be paid as per the unsecured class.

Thousand Six Hundred Eighty Three Dollars and 68/100($494,683.68) in principal plus 0% interest, as of the Filing Date, secured by a first lien on the property located at 189 S. Collingsworth.

(b)  <u>Credit for Adequate Protection Payments</u>: <u>Interest Rate:</u> The adequate protection payments made will be applied to interest, principal and where appropriate taxes. Interest from the Petition Date to the Effective Date shall accrue on the outstanding principal balance at the non-default contract rate.

(c)  <u>Interest Rate:</u> The interest rate will remain 0%

(d)  <u>Term:</u> The Secured Claim will be paid on the basis of a 30 year amortization schedule with interest as stated above beginning the first day of the first full month following the Effective Date with a like payment on the first of each month thereafter until paid in full with a 10 year call.

(e)  <u>Lien Retention</u>**:**  The Claimant shall retain its Lien.

(f)  <u>Accounting:</u> At any time within one hundred and twenty (120) days of the Effective Date, at the request of the Debtor the Claimant shall furnish an accounting to the Debtor of all funds received since the inception of the debt and the application of those proceeds to principal, interest or other charges.

(g)  <u>Loan Documents</u>: In the event a dispute arises concerning the Claim of City of El Paso the loan documents between City of El Paso and the Debtor shall control.

(h)  <u>Prepayment Penalties:</u> There will be no prepayment penalties.

(i)  <u>Insurance Proceed:</u> Any proceeds received from the Property Insurance Company due to damage to the property will be used to repair the property.

9.9.  **<u>Class 3(f) – The City of El Paso:</u>** The following terms, conditions and method of payment shall apply to the Allowed Secured Claim of City of El Paso.  The collateral securing the Claim of City of El Paso shall remain in Debtor's possession

(a) <u>Amount of Secured Claim:</u> The Secured Claim of the City of El Paso as of the filing date in the approximate amount of Seventy Six Thousand Eight Hundred Sixty Two Dollars and 07/100 ($76,862.07) in principal plus 0% interest, as of the Filing Date, secured by the property located at 202-204 W. California.

(b) <u>Credit for Adequate Protection Payments</u>: The adequate protection payments made will be applied to interest, principal and where appropriate taxes. Interest from the Petition Date to the Effective Date shall accrue on the outstanding principal balance at the non-default contract rate.

(c) <u>Interest Rate:</u> The interest rate will remain 0%.

(d) <u>Term:</u> The Secured Claim will be paid on the basis of a 30 year amortization schedule with interest as stated above beginning the first day of the first full month following the Effective Date with a like payment on the first of each month thereafter until paid in full, with a 10 year call.

(e) <u>Lien Retention:</u> The Claimant shall retain its Lien.

(f) <u>Accounting:</u> At any time within one hundred and twenty (120) days of the Effective Date, at the request of the Debtor the Claimant shall furnish an accounting to the Debtor of all funds received since the inception of the debt and the application of those proceeds to principal, interest or other charges.

(g) <u>Loan Documents:</u> In the event a dispute arises concerning the Claim of City of El Paso the loan documents between City of El Paso and the Debtor shall control.

(h) <u>Prepayment Penalties:</u> There will be no prepayment penalties.

(i) <u>Insurance Proceed:</u> Any proceeds received from the Property Insurance for coverage due to damage to the property will be used to repair the property.

9.10. **Class 3(g) – The City of El Paso:** The following terms, conditions and method of payment shall apply to the Allowed Secured Claim of City of El Paso. The collateral securing the Claim of City of El Paso shall remain in Debtor's possession.

(a) <u>Amount of Secured Claim:</u> The Secured Claim of the City of El Paso as of the filing date in the approximate amount of Four Hundred Forty Seven Thousand Eight Hundred Ninety Four Dollars and 18/100 ($447,894.18) in principal plus 0% interest, as of the Filing Date, secured by first liens on the properties located at 917 Ochoa St.[9]

(b) <u>Credit for Adequate Protection Payments</u>: The adequate protection payments made will be applied to interest, principal and where appropriate taxes. Interest from the Petition Date to the Effective Date shall accrue on the outstanding principal balance at the non-default contract rate.

(c) <u>Interest Rate:</u> The interest shall remain 0%.

(d) <u>Term:</u> The Secured Claim will be paid on the basis of a 30 year amortization schedule with interest as stated above beginning the first day of the first full month following the effective date with a like payment on the first of each month thereafter until paid in full, with a 10 year call.

(e) <u>Lien Retention:</u> The Claimant shall retain its Lien.

(f) <u>Accounting:</u> At any time within one hundred and twenty (120) days of the Effective Date, at the request of the Debtor the Claimant shall furnish an accounting to the Debtor of all funds received since the inception of the debt and the application of those proceeds to principal, interest or other charges.

(g) <u>Loan Documents:</u> In the event a dispute arises concerning the Claim of City of El Paso the loan documents between City of El Paso and the Debtor shall control.

---

[9] A Motion to Value will be filed if the motion is granted this claim will be bifurcated and $333,313.00 will be treated as a secured claim and the amount of $114,581.00 will be paid as per the unsecured class.

(h) <u>Prepayment Penalties:</u> There will be no prepayment penalties.

(i) <u>Insurance Proceed:</u> Any proceeds received from the Property Insurance Company due to damage to the property will be used to repair the property.

9.11. **<u>Class 3(h) – US Small Business Administration</u>**: The following terms, conditions and method of payment shall apply to the Allowed Secured Claim of US Small Business Administration. The collateral securing the Claim of US Small Business Administration shall remain in Debtor's possession.

(a) <u>Amount of Secured:</u> The Secured Claim of US Small Business Administration as of the filing date in the approximate amount of  Eight Four Thousand Nine Hundred Seven dollars and 43/100 ($ 84,907.43) in principal plus  4% interest,  as of the Filing Date, secured by a second lien on the properties located at 1014 and 1015 Myrtle.

(b) <u>Credit for Adequate Protection Payments:</u> The adequate protection payments made will be applied to interest, principal and where appropriate taxes. Interest from the Petition Date to the Effective Date shall accrue on the outstanding principal balance at the non-default contract rate.

(c) <u>Interest Rate:</u> The interest rate shall remain 4%.

(d) <u>Term:</u> The Secured Claim will be paid on the basis of a 30 year amortization schedule with interest as stated above beginning the first day of the first full month following the Effective Date with a like payment on the first of each month thereafter until paid in full, with a 10 year call.[10]

(e) <u>Lien Retention:</u> The Claimant shall retain its Lien.

(f) <u>Accounting:</u> At any time within one hundred and twenty (120) days of the Effective Date, at the request of the Debtor the Claimant shall furnish an accounting to the Debtor of all funds received since

---

[10] A Motion to Value will be filed if the motion is granted this entire claim will be paid as per the unsecured class.

the inception of the debt and the application of those proceeds to principal, interest or other charges.

(g)  <u>Loan Documents:</u> In the event a dispute arises concerning the Claim of US Small Business Administration the loan documents between Four US Small Business Administration and the Debtor shall control.

(h)  <u>Prepayment Penalties:</u> There will be no prepayment penalties.

(i)  <u>Insurance Proceed:</u> Any proceeds received from the Property Insurance Company due to damage to the property will be used to repair the property.

9.12.  **Class 3(i) – City of El Paso Property Taxes:** The following terms, conditions and method of payment shall apply to the Allowed Secured Claim of City of El Paso.  The collateral securing the Claim of City of El Paso shall remain in Debtor's possession

(a)  <u>Amount of Secured Claim:</u> The Secured Claim of the City of El Paso for property taxes as of the filing date in the approximate amount of  Forty Four Thousand Two Hundred Forty Five dollars and 53/100 ($44,245.53), as of the Filing Date, secured by first lien on several properties.

(b)  <u>Interest Rate</u>: The interest rate for this claim will be 4%.

(c)  <u>Term:</u> The Secured Claim will be paid in 60 monthly payments with interest as stated above beginning the first day of the first full month following the effective date.[11]

(d)  <u>Lien Retention:</u> The Claimant shall retain its Lien.

9.13.  **Class 4 – Retained Interest in Property by Stoiber:** Stoiber will retain her interest in all properties.

---

[11] Debtor intents to object to this claim because it includes unpaid property taxes for the property located at 12532 Tierra China. The taxes are to be paid by the mortgage company as said property is being refinanced as per court approval. The Debtor is not liable on the note; however, she is listed on the deed.

## SECTION 10 - MECHANICS AND IMPLEMENTATION OF THE PLAN

10. **Means for Execution of this Plan:** The Proponent of the Plan provides the following means for the execution of the Plan.

    10.1. **Source of Funds - Future Earnings:** The source of funds to fund the Plan is the future income of Maria Gabriela Stoiber and the rents collected from her properties.

    10.2. **Cash Payments:**  Beginning on the Effective Date, the Debtor shall make the cash payments required under the Plan.

## SECTION 11 - FEASIBILITY OF THE PLAN

11. **Feasibility:**  The following Sections describe the feasibility of the Plan as proposed by the Debtor.

    11.1. **Future Earnings:** The Plan of Reorganization is premised on the future earnings of the Debtor from rents collected from her rental properties.

    11.2. **No Further Reorganization Proceedings:** Debtor believes that the apartment units described herein  will be provide sufficient income in the future to fund all of the obligations under the proposed Plan.

## SECTION 12 - CLAIMS

12. **Claims Allowance Procedure and Conditions to Distribution:** The following terms and conditions are conditions precedent to the right of a Creditor to receive distributions under the Plan[12] :

    12.1. **Objections to Claims:**  All references to Claims and amounts of Claims refer to the amount of the Claim as allowed by the Court, an Allowed Claim. The Debtor, or any party in interest who wishes to object to a Claim, must object to such Claim within one hundred twenty (120) days after the Effective Date in order to have the Court determine the amount allowed to be paid under this Plan. Upon application filed within such one hundred twenty (120) day period, if cause is shown, the Court may extend such period for a time reasonable under the circumstances. If no objection is filed within the time so limited to the allowance of any Claim, such Claim shall become an Allowed Claim.  See **"Section 19 - Retention of Jurisdiction by the Court," page 68.**

    12.2. **No Distribution until Objection Resolved:** If the Debtor, or another party in interest, files an objection to a Claim, no payment shall be made on such Claim until

---

[12]   Unless otherwise set forth in this Disclosure Statement the Debtor is unaware of any facts which would give rise to an objection to any claim.

the dispute is resolved by the Court pursuant to a Final Order.  If any Claim, or a portion thereof, is challenged by objection, the Reorganized Debtor shall segregate and set aside funds consistent with the Plan of Reorganization, sufficient to satisfy the Claim as filed, or as scheduled by the Debtor as set forth in the preceding paragraph12.1- Objections to Claims.  When an objection to a Claim has been resolved, distribution shall be made accordingly. If the Court determines that the Debtor is obligated on any such Claim, such Claim shall be paid in accordance with the terms herein as allowed by the Court.  Such Creditor shall then be paid pursuant to the terms set forth in Section 9 - Treatment and Distributions to Creditors Under the Plan, page 30 of this Disclosure Statement. Such payment or payments shall constitute full satisfaction and discharge of each of such Claims.

12.3.  **Deficiency Claims:** Unsecured Creditors whose Claims arise out of a deficiency resulting from the surrender of collateral, if any, to a previously Secured Creditor, or resulting from Orders granting relief from the provisions of **Section 362 of the Code**, must file their Claims within thirty (30) days after Confirmation of this Plan Of Reorganization.  Unsecured Creditors whose Claims arise out of an Order issued pursuant to **Section 506(a) or 1111(b) of the Code** must file their Claims by the later of the Bar Date or thirty (30) days after the entry of the **Section 506(a) or Section 1111(b) of the Code** Final Order to be included in Class 3.

12.4.  **Other Claims, Including Amendment to Claims:** All Claims not allowed or filed prior to Confirmation, including post-petition Claims, and not previously barred by prior Order and not covered by the preceding two (2) Sections, shall be barred if not filed on or before sixty (60) days after Confirmation, including Claims, or amendments to Claims and/or applications for compensation arising under Sections 330, 503 or 506 of the Code, unless the Bar Date shall not have expired in which event the later of the two (2) dates shall apply.

12.5.  **Performance of Obligations:** Any entity, including a Creditor, which has not, within the time provided in the Plan of Reorganization or any Final Order of the Court, performed any material act required in the Plan of Reorganization or any Final Order of the Court, shall not be entitled to participate in any distribution under the Plan of Reorganization.

## SECTION 13 – GENERAL TERMS AND CONDITIONS

13. **General Terms and Conditions:** The following general terms and conditions apply to this Plan :

13.1.  **Revestment of Title:** On Confirmation, the Debtor shall be vested with her property subject only to the terms of the Plan and the Liens of the Secured Creditors described herein.

13.2.  **Discharge:** Confirmation of the Plan does not discharge any debt provided for in the Plan until the court grants a discharge on completion of all payments under the

Plan, or as otherwise provided in § 1141(d)(5) of the Code.  Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

13.3.  **Preservation of Bankruptcy Causes of Action:**  Pursuant to **Section 1123(b)(3)(B) of the Code**, the Debtor or Successor to the Debtor shall retain each and every claim, demand or cause of action whatsoever which the Debtor or the Debtor-in-Possession had or had power to assert immediately prior to Confirmation of this Plan of Reorganization. Included, without limitation, are actions for the avoidance and recovery, pursuant to **Section 550 of the Code**, of transfers avoidable by reason of **Sections 544, 545, 547, 549 or 553(b) of the Code**. The Debtor may commence or continue in any appropriate Court or tribunal any suit or other proceeding for the enforcement of the same. Any and all Claims which the Debtor or the estate of the Debtor may have or which may arise under any of the provisions of the Code or which may be enforceable under any of the provisions of the Code or any other law or statute, including Claims of the Estates, shall be preserved and the Court shall retain jurisdiction to dispose of such causes of action, including common or statutory law causes of action unrelated to bankruptcy, pursuant to **Section 1123(b)(3)(B) of the Code**.  All such causes of action shall belong to the Debtor or Successor to the Debtor as part of the Property of such Debtor.  To the extent any cause of action shall be non-transferable to the Debtor, the Debtor shall prosecute such causes of action for the benefit of the estate.  Any recovery of such non-transferable causes of action shall be distributed as the Court finds is fair and equitable.

13.4.  **No Additional Charges:** Except as expressly stated in this Plan, or as allowed by Court Order, no interest, penalty, late charge or additional charges (such as attorney's fees) shall be allowed on any Claim subsequent to the Filing Date.

13.5.  **De Minimi Distributions:** Notwithstanding anything to the contrary herein, no distributions of cash shall be made hereunder in an amount less than Ten Dollars ($10).  All cash not distributed pursuant to this provision shall vest in the Debtor, free of any Claim.

13.6.  **Closing the Case:** At such time as the Case has been fully administered, that is, when all things requiring action by the Court have been done, pursuant to **Section 350 of the Code**, and this Plan has been Substantially Consummated, pursuant to **Section 1101(2) of the Code**, this case shall be closed.  To close the Case, the Debtor shall file an Application to close the Case showing that the Case has been fully administered and that this Plan has been Substantially Consummated.  The Court shall conduct a hearing upon the application, after notice to all Creditors and other parties in interest, after which an order closing the Case may be entered. After the Plan has fully paid for the Debtor shall file a motion to reopen the Case for the purpose of obtaining a discharge.

13.7. **Time Period to Close Case:** The Debtor shall file an Application to Close the Case within One Hundred Eighty (180) days from the date of the Order Confirming Plan.

13.8. **Non-Waiver:** Nothing in this Plan and Disclosure Statement shall be deemed to waive, limit or restrict in any way the discharge granted upon Confirmation of this Plan in **Section 1141 of the Code**.

13.9. **Law Governing Construction:** This Plan shall be governed by, and construed and enforced, including defaults under this Plan, in accordance with, the laws of the State of Texas and where applicable the laws of the United States.

## SECTION 14 - DEFAULT BY MARIA GABRIELA STOIBER OF ANY UNSECURED CLAIM

14. **Default In Payment of Claims of Unsecured Creditors:** The following terms and conditions shall apply to any default in any payment to any holder of an Allowed Unsecured Claim:

14.1. **Conditions of Default and Remedies:** A failure by the Debtor to make payment pursuant to the terms of Class 2 shall be an event of default. The Debtor shall have fifteen (15) days from receipt of notice from a Claimant in which such default has occurred to cure the default. If the default is not cured within the fifteen (15) day period, the Claimant may (a) accelerate the Allowed Claims in such class to be immediately due and owing and/or (b) pursue any and all available state and federal rights and remedies. The Debtor is permitted to cure a default in any class only three (3) times.

14.2. **Defenses:** In any litigation brought by an Unsecured Claimant the Allowed Claim of such Unsecured Claimant is conclusively presumed to be correct and may not be challenged in any manner by the Successor To The Debtor or in the case of a non-discharge able Claim by the Debtor.

## SECTION 15 - TERMS AND CONDITIONS APPLICABLE TO SECURED CREDITORS

15. **Terms and Conditions Relating to Secured Creditors:** Classes 4(a) through 4(r) consist of the Secured Claims of all Secured Creditors, except those Creditors whose collateral has been abandoned to them, or for which an order for relief from the provisions of **Sections 362 of the Code** has been granted as finally allowed and ordered paid by the Court, and to the extent that such Claims are not greater than the value of the Debtor's assets which the Court finds are valid security for such Claims. The following terms and conditions apply to all Creditors holding Liens against Property of the Estate:

15.1.  **Preserved Liens:** To the extent required under **Section 1124(2) of the Code**, to preserve the rights of a Creditor having a Secured Claim dealt with pursuant to **Section 9**, the Lien of that Creditor shall, to the extent valid, be preserved.

15.2.  **Release of Liens:**  Other than the Liens securing the Claims described in **Section 9** all Liens securing any Secured Claim shall be deemed to have been relinquished and reconveyed to the Debtor as of the Effective Date.  Upon payment in full to the Secured Creditors described in **Section 9**, such Secured Creditors shall execute the documents necessary to release their Liens securing such property.

15.3.  **Adoption of Terms and Conditions:** The contract and loan documents between Maria Gabriela Stoiber and the Secured Party are hereby adopted in full by the Debtor and any Successor to the Debtor without alteration of any kind, except as provided in this Section 9.

15.4.  **Determination of Secured Status:**  The value of a Secured Claimant's collateral shall be determined by the value assigned to that collateral by the Debtor's in their schedules unless a different value of a specific item of collateral is referred to elsewhere in this Plan and Disclosure Statement, in which event the referenced value shall apply.  The Order Confirming Plan shall operate as an order determining the value of collateral pursuant to **Section 506(b) of the Code**.  The unsecured portion of a Secured Creditor's Claim shall be paid pursuant to Class 3 of this Plan. In the event that a Secured Creditor objects to such value the Court shall set a hearing to determine the Secured Status of that Secured Creditors Claim. The Debtor and/or the Successor to the Debtor reserve the right to commence proceedings to determine a Creditor's secured status, pursuant to **Section 506(b) of the Code**, for a period of one hundred eighty (180) days after the Effective Date if the any provision of this section is held unenforceable.

15.5.  **Escrow Account to be Maintained:**   To the extent that the Holders of Secured Claims do not maintain an escrow account for insurance and taxes and the Debtor, as initially provided for in the cash collateral orders, is maintaining escrow for taxes and/or insurance, the Debtor will continue to contribute monthly to such account to insure there are adequate funds on hand to pay insurance and taxes as they become due. To the extent that the Holders of Secured Claims are maintaining escrow accounts for insurance and taxes, the Debtor will continue to contribute monthly to such escrow amounts for taxes and/or insurance, the Debtor will continue to contribute monthly to such escrow accounts in amounts reasonably determined by the Holders to be sufficient, according to normal industry standards.

15.6.  **Escrow Account may be Transferred:** To the extent that any secured party is not presently maintaining an escrow account for either property taxes or insurance or both such secured party upon written request may establish such account. Within ten days of such request the Debtor shall transfer to the requesting secured party funds presently being held in escrow to the lender and within ten days there after the lender shall by letter establish a monthly amount to be paid into such escrow

account. Such request shall be determined on the basis of normal industry standards for escrow accounts.

15.7. **Section 1111(b) Election:** If a Claimant is entitled to and makes an election to be deemed fully secured pursuant to **Section 1111(b) of the Code**, then:

    (a) **Present Dollar Value:** The present dollar value of all payments made on account of such Claim pursuant to this Plan shall be equal to or greater than the Collateral Value, and;

    (b) **Total of Payments:** The total of all payments made on account of such Claim pursuant to this Plan shall be equal to or greater than the Allowed Claim.

    (c) **Condition to be Satisfied:** If the payments called for in the preceding Section (b) fail to equal the Allowed Claim, then the monthly payments shall be extended until such condition is satisfied.

15.8. **Other Documents:** The Debtor and or Successor to the Debtor shall execute such other and further document, including renewal and extension agreements, as each secured party may reasonably request.

## SECTION 16 - TREATMENT OF LATE CHARGES, INTEREST, PENALTIES, COSTS, FEES AND ADDITIONAL CHARGES

16. **Determination of Interest and Other Fees:** In determining the amount of an Allowed Claim of any Creditor, or the amount of payment to be made by the Debtor to cure defaults under any existing secured notes or contracts, any interest, penalties, late charges, attorneys' fees or additional charges of any nature whatsoever accruing after the Filing Date, shall not be allowed **unless** (a) such Creditor files a proof of claim with the Court and serves a copy of such Claim which conforms with Official Bankruptcy Form No. B 10 on counsel for the Debtor (Sidney J. Diamond, of Diamond Law, 3800 N. Mesa, B-3 El Paso, Texas, 79902) within sixty (60) days after the Confirmation Date, and (b) such proof of claim specifically describes the nature and calculation of additional charges incurred by such Creditor, and, where recovery of attorneys' fees is sought, provides an itemized statement of fees, time, and expenses sufficient in detail to comply with the requirements of the Code and Rules (including Local Bankruptcy Rules Of Procedure for the Western District of Texas) for detailing such time and expense. The Debtor serves the right to request further information and further detail. Any attorneys' fees and/or other charges resulting from provisions of the secured party's contract, pursuant to section 506 of the Code, arising from an Allowed Claim or an Order allowing such attorney's fees and other expenses, shall be added to the principal balance of the obligation, pursuant to its Allowed Secured Claim. **FAILURE OF ANY CREDITOR TO TIMELY AND PROPERLY FILE SUCH PROOF OF CLAIM SHALL BE DEEMED A WAIVER OF ITS**

**CLAIM FOR ADDITIONAL CHARGES AND SUCH CLAIM SHALL BE DISCHARGED.**  Upon the filing of such Claim, the Debtor shall have thirty (30) days in which to object to the allowance of such Claim. If no objection is filed before the expiration of thirty (30) days following the filing of such a Claim, the Claim shall be deemed an Allowed Claim and paid pursuant to the terms of this Plan.  In the event that an objection to such Claim is filed, such Claim will be paid only upon allowance of such Claim by the Court.  Objections to Claims, except Claims for additional charges which are governed by this paragraph, may be filed after voting on and after Confirmation of this Plan  pursuant to the provisions of paragraph 12.1  hereof.

## SECTION 17 - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

17. **Unexpired Leases and Executory Contracts:** Maria Stoiber is a party to certain unexpired leases and executory contracts as set forth in the schedules and statements on file in this case. All such leases are hereby assumed. The foregoing basically consists leases with tenants of the apartment complexes. Debtor is, however, rejecting four executory contracts with Automatic Laundry Company, Ltd, one executory contract with Entertaiment Extra, and a one with University Hills Plaza as listed in Schedule G.

## SECTION 18 - SATISFACTION OF CLAIMS AND INTERESTS

18. **Satisfaction of Claims and Interests:**  Various Classes of Claims and Interests are defined in the Plan of Reorganization.  The Plan of Reorganization is intended to deal with all Claims against the Debtor of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Court pursuant to **Section 502(h) of the Code**.  However, only those Claims allowed pursuant to **Section 502(a) of the Code** will receive distributions under this Plan. All Creditors and other parties in interest who have or assert Claims in any Class shall, upon Confirmation of this Plan, be deemed to have acknowledged that their respective Claims are fully satisfied by the distribution provided therein, each of which Claims, whether known or unknown, scheduled or unscheduled, filed or unfiled, asserted or assertable, pursuant to Section 1141(a) of the Code, are declared and shall be, for all purposes, upon the entry of the Order Confirming Plan, satisfied in full by such distributions. All Impaired Classes of Claims shall receive the distributions set forth in **Section 9 of this Disclosure Statement** on account of, and in complete satisfaction of, all such Allowed Claims (and any interest accrued thereon). Without limiting the foregoing and effective on the Effective Date, each Creditor (or its successor) shall be deemed to have assigned to the Debtor all such Claims and all such parties shall be deemed to have waived, relinquished and released any and all of their rights, Claims (other than as provided for in this Disclosure Statement or in the Order Confirming Plan) against the Debtor.

## SECTION 19 - RETENTION OF JURISDICTION

DEBTOR'S DISCLOSURE STATEMENT- Page 38

19. **Retention of Jurisdiction by the Court:**  Subject to the limitations set forth in this Plan, the Court shall retain jurisdiction, until all payments provided for in the Plan Of Reorganization have been fully paid, and for certain purposes including, but not limited to:

19.1.  **Claims:** The classification of the Claim of any Creditor, and re-examination of Claims which have been allowed for purposes of voting, and the determination of such objections to Claims as may be filed.  The failure of the Debtor to object to, or to examine, any Claim for the purposes of voting, shall not be deemed a waiver of the Debtor's right to object to, or re-examine, the Claim in whole or in part. If a Creditor does not file a Claim in these proceedings, the Debtor may object to the amount scheduled as owing to that Creditor, in whole or in part.  If any objection to a Claim is filed, no payment will be made with respect to such Claim until a determination on such objection has been made by the Court as provided elsewhere in the Plan.

19.2.  **Title to and Liens Against Assets:**  Determination of all questions and disputes regarding title to and Liens on the assets of the estate and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to an action pending as of the date of Confirmation, between the Debtor and any other party, including, but not limited to, the right of the Debtor to recover assets pursuant to the provisions of the Code.

19.3.  **Correction of Defects:**  The correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan of Reorganization or in the Order of Confirmation as may be necessary to carry out the purposes and intent of the Plan of Reorganization.

19.4.  **Modification After Confirmation:**  The modification of this Plan of Reorganization after Confirmation pursuant to **Section 1127(b) of the Code**.

19.5.  **Enforcement:** The enforcement and interpretation of the terms and conditions of this Plan Of Reorganization

19.6.  **Further Orders:** Entry of any Order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as the Court may deem necessary.

19.7.  **Previous Orders:** To enforce all Orders previously entered by the Court.

19.8.  **Continuing Jurisdiction:**  Determination of all issues and disputes regarding title to Property of the Estate, and determination of all causes of action, controversies, duties, or conflicts, whether or not subject to litigation or proceedings as of Confirmation, between the Debtor and any other party, including, but not limited to, any right of the Debtor to recover assets pursuant to the provisions of the Code.

19.9. **Adversary Proceedings:** The Debtor reserves the right to begin or continue any adversary proceedings permitted under the Code and the applicable Federal Rules of Bankruptcy Procedure.

19.10. **Implementation of Plan:** Entry of any Order or such direction as may be appropriate under **Section 1142 of the Code** for the purpose of implementing the Plan of Reorganization.

19.11. **Conclusion:** Entry of an order concluding and terminating this Case, provided, however, the Court shall retain jurisdiction over any and all adversary proceedings which may be pending.

## SECTION 20 - ALTERNATIVES TO THIS PLAN

20. **Liquidation Analysis of the Debtor's Property:** In order to arrive at a judgment on whether or not to vote for or against the Plan Of Reorganization proposed by the Debtor, a Creditor or other party in interest needs to have an understanding of the consequences of what would be realized by the estate of the Debtor if any of the Property of the Debtor was sold pursuant to another Plan, the Property was sold pursuant to a motion to sell and the net proceed were available for distribution, or the case converted to one under Chapter 7 of the Code. Additionally, in order for the Court to confirm this Plan, it must find, pursuant to **Section 1129(a)(7)(A)(i)(ii) of the Code**, with respect to each impaired class of Claims that each holder of a Claim of such class (I) has accepted this Plan of Reorganization or (ii) will receive or retain under this Plan Of Reorganization on account of such Claim, property of a value, as of the Effective Date of this Plan Of Reorganization, that is not less than the amount that such holder would receive under Chapter 7 on such date, which is known as the "Best Interest Of Creditors Test." The Code further requires that if **Section 1111(b)(2) of the Code** applies to Claims of a class, each holder of a Claim of such class will receive or retain under this Plan Of Reorganization, on account of such Claim, property of a value, as of the Effective Date of this Plan Of Reorganization, that is not less than the value of such holder's Interest in the estate's Interest in the property that secured such Claims, pursuant to **Section 1129(a)(7)(B) of the Code**.

20.1. **Valuation of the Assets:** The liquidation value of Debtor's assets are more fully set forth **Section 6 of this Plan and Disclosure Statement**. In the opinion of Maria Gabriela Stoiber, the liquidation of their assets outside of a Chapter 7 context exceeds the amount which Creditors would get from a "fire sale" of the Debtor's assets by the Debtor or Chapter 7 Trustee. Due to the nature of the Debtor's assets and business, the liquidation values of the various assets owned by the Debtor is substantially less than their going concern value. Further, in the event this case was liquidated pursuant to Chapter 7 of the Bankruptcy Code, the Chapter 7 Trustee would be entitled to receive compensation under Section 326 of the Bankruptcy Code. Accordingly, in compliance with Section 1129(a) (7) of the Bankruptcy Code, each holder of a Claim or interest who has not accepted the Plan will receive or retain under the Plan, on account of such Claim or interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder

would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. The Chapter 7 Trustee would also incur cost in relation to holding and disposing the Debtor's property and would have to pay the administrative cost incurred in this Chapter 11 Case.

20.2. **Another Plan:** The Debtor knows of no other Plan which is to be proposed to the Court. The Debtor believes that this Plan represents the Debtor's best efforts for repayment to their Creditors.

20.3. **Summary:** It is highly unlikely that if this case were converted to ones under Chapter 7 of the Code that Unsecured Creditors would receive a distribution that would be equal to the fair market value, less liens and costs of administration that is set forth herein. Maria Gabriela Stoiber believes the Plan, which proposes to pay all Creditors in full, is the most satisfactory solution.

## SECTION 21 - RISKS TO CREDITORS UNDER THIS PLAN

21. **Risk Factors:**   Certain significant risk factors are inherent in the consummation of any Plan. The successful implementation of the Plan is dependent upon the ability of Maria Gabriela Stoiber to.  Certain other risks are inherent to this Plan, which are:

21.1. **Economic Conditions:** Current economic conditions are unstable and will apparently remain unstable for a period of time. These economic conditions could affect the ability to refinance or sell properties at favorable values or favorable terms.

21.2. **Housing Market:** The inability to obtain financing has dramatically affected the housing market. The inability to buy homes is a factor in the low vacancy rates experienced by the Debtor.As the housing market improves, assuming such event occurs, demand for rental units may be adversely affected.

## SECTION 23 - RESERVATION OF RIGHTS

22. **Reservation of Rights:**   The filing of the Plan and this Disclosure Statement, nor any statement or provision contained in the Plan and this Disclosure Statement, nor the taking by a Creditor or other party in interest of any action with respect to the Plan And this Disclosure Statement shall (a) until the Effective Date, be or be deemed to be an admission against interest, or (b) until the Effective Date, be or be deemed to be a waiver of any rights that any Creditor or other party in interest might have against the Debtor or any Property of the Estates, as that term is defined in **Section 541 of the Code**, or any other Creditor or other party in interest of the Debtor, and until the Effective Date all such rights are specifically reserved. In the event that the Effective Date does not occur the Plan, nor any statement contained in this Disclosure Statement may be used or relied upon

in any manner in any suit, action, proceeding, or controversy within the case involving the Debtor.

## SECTION 24 - TAX CONSEQUENCES OF CONSUMMATION OF THIS PLAN

23. **General**:   It is not practical nor is it intended by this general discussion to present herein a detailed explanation of the Federal Income Tax aspects of this Plan. In addition, although the following discussion is based upon the relevant provisions of the Internal Revenue Code of 1954, as amended (the "Code"), regulations promulgated by the Internal Revenue Service pursuant to the Code ("Regulations") the Bankruptcy Tax Act of 1986 (as amended), the Revenue Reconciliation Act of 1993, the Economic Growth and Tax Reconciliation Act of 2001, the Jobs and Growth Tax Relief Reconciliation Act of 2003 and judicial administrative interpretations thereof presently in effect, in some cases the proper interpretation of such authority or their application to particular factual situations is unclear.  Moreover, each Creditor is cautioned that this discussion is based in part on the provision of the Tax Reform Acts of 1984, 1986, 1993, 2001 and 2003 which have been enacted into law, and as to which, there are, to date, varying judicial or administrative interpretations.   As a result of the foregoing, under current law, there is substantial uncertainty surrounding many of the tax consequences applicable to the various payments to be made under this Plan.  Additionally, Creditors are further advised that no ruling has been requested or obtained from the Internal Revenue Service (the "IRS") nor has an opinion of counsel been obtained by the Debtor with respect to the tax aspect of this Plan. For all of the foregoing reasons and because the Federal Income Tax consequences of this Plan will depend in part upon certain factual matters unknown to the Debtor relating to each particular creditor, **EACH CREDITOR IS URGED TO SEEK ADVICE FROM HER OR ITS OWN TAX ADVISER WITH RESPECT TO THE FEDERAL INCOME TAX CONSEQUENCES OF This Plan, AND, IF APPLICABLE, STATE AND LOCAL TAX CONSEQUENCES.**

23.1. **Tax Consequences to Creditors:** The tax consequences to each Creditor will vary depending upon the extent to which the Creditor receives payment, and the manner and time in which the Creditor is paid.  In general, a Creditor who receives only cash in satisfaction of her Claim will recognize ordinary income to the extent that the amount received is allocable to Claims or interests that were not previously included in its income, and will recognize a loss to the extent such accrued interest was previously included in income and is deemed not to be paid in full.  In addition, such Creditor will normally recognize a gain or a loss on a payment and extinguishment of its Claim equal to the difference between the adjusted basis of its Claim (other than Claims with respect to accrued interest) and the balance as the amount of cash received after any allocation of the proceeds to accrued interest. Amounts realized in payment and satisfaction of the Claim will usually be applied first to the payment of accrued interest in the absence of an agreement between the Debtor and the Creditor providing for a different allocation.  THE Debtor AND THEIR COUNSEL AND ACCOUNTANTS EXPRESS NO OPINION CONCERNING THE TAXES CONSEQUENCES OF This Plan TO ANY CREDITOR.

23.2.  **Tax Consequences to Debtor:** Generally, Internal Revenue Code Section 108 provides that the cancellation of indebtedness by a creditor results in a Debtor having to recognize income on the difference between the amount paid for such cancellation and the amount of the debt canceled.  In a Chapter 11 case where this Plan has been approved, no income is actually recognized and taxed but instead a Debtor tax attribute, such as net operating loss, carry forwards and investment tax credits are reduced to the extent of the deemed income in the order and priority as set forth in the Code.

## SECTION 25 - SUMMARY OF SIGNIFICANT ORDERS ENTERED IN THE CASE

24.  **Summary of Significant Orders:** The following is a summary of the significant order entered in this case, which are as follow:

24.1.  **Use of Cash Collateral and Adequate Protection:** Significant orders that have been entered in this case, as of the date of this Plan and Disclosure Statement have been orders allowing the use of cash collateral with each holder of a secured claim. In general these orders required that interest be paid on a current basis.

## SECTION 26 – DEFINITIONS

25.  **Definitions:** The following terms have the following meanings (such meanings to be equally applicable to both the singular and plural forms of the terms defined) whenever used in this Plan and Disclosure Statement:

25.1.  **Administrative Claim:** Administrative claim shall mean any Claim for a cost or expense of administration of the Chapter 11 Case allowed under sections 364(b) 503(b) and/or 507(a)(1) of the  Code, including, without limitation, any actual and necessary post petition expenses of preserving the estate of the Debtor, any actual and necessary post petition expenses of operating the business of the Debtor in Possession in question, all compensation or reimbursement of expenses to the extent allowed by the  Court under section 330, 331, or 503 of the  Code, and any fees or charges assessed against the estate of the Debtor under section 1930 of title 28 of the United States Code.

25.2.  **Administrative Claimant:** Administrative claimant shall mean the holder of an Administrative Claim.

25.3.  **Administrative Expenses:** Administrative Expenses shall mean Claims and expenses of the type described in Sections 9.2 of this Plan  Of Reorganization which are allowed and ordered paid by the Court pursuant to Section 503(b) of the Code and which are entitled to priority pursuant to Section 507(a)(1) of the Code, including, without limitation.

25.4.  **Allowance Date:** Allowance Date shall mean the date of a Final Order of the Court allowing a Claim or Interest in this Case

25.5.  **Allowed:** Allowed shall mean when used with respect to a Claim, other than an Administrative Claim, means, except as otherwise provided herein, a Claim, proof of which was timely and properly filed or, if no proof of Claim was filed, which has been or hereafter is listed by the Debtor in question on its Schedules as liquidated in amount and not dispute  or contingent or for which, pursuant to order of the Bankruptcy Court, applicable law, or otherwise, a proof of Claim is not required to be filed, and, in either case, as to which no objection to the allowance thereof has been filed on or before the latest of (I) the forty-five (45) days after the Effective Date, or (ii) the thirty (30) days after proof of such Claim is filed, or (iii) thirty (30) days after the Bar Date for filing the Claim, or (iv) such other applicable period of time limitation as may be fixed or extended by the Bankruptcy Court; except the time to object to Claims arising from the rejection of executory contracts is 60 days after the Effective Date.

25.6.  **Allowed Claim:** Allowed Claim shall mean a Claim (a) in respect of which a proof of claim has been filed with the Court within the applicable period of limitation fixed by the Court, pursuant to Rule 3003 or (b) scheduled in the list of Creditors prepared and filed with the Court, pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, in either case, as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3003 or an Order of the Court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending, a Final Order.  Allowed Claim shall not include interest on the principal amount of such Claim subsequent to the Filing Date, except as may be otherwise provided in this Plan.

25.7.  **Allowed Priority Claim:**  Allowed Priority Claim shall mean an Allowed Claim for which the holder asserts, and is determined to be entitled to, priority under Section 507, et seq., of the Code, in an amount allowed by Final Order of the Court upon a request pursuant to Section 503(a) of the Code.

25.8.  **Allowed Secured Claim:**  Allowed Secured Claim shall mean an Allowed Claim arising on or before the Filing Date that is secured by a valid Lien on Property of the Debtor which is not void or voidable under any state or federal law, including any provision of the Code, as hereinafter defined, or an Allowed Claim for which the holder asserts a set off under Section 553 of the Code, to the extent of the value (which is either agreed to by the Debtor pursuant to this Plan  or, in the absence of an agreement, has been determined in accordance with Sections 506(a) or 1111(b) of the Code) of the interest of the holder of such Allowed Claim on the Property of the Debtor, or an Allowed Claim that the Debtor has agreed to treat as an Allowed Secured Claim pursuant to this Plan .  That portion of such Allowed Claim

exceeding the value of security held therefore shall be an Allowed Unsecured Claim, unless otherwise modified by this Plan.

25.9. **Allowed Unsecured Claim:** Allowed Unsecured Claim shall mean an Allowed Claim against the Debtor which is not an Allowed Administrative Claim, an Allowed Priority Claim, an Allowed Secured Claim, or a retained Interest by the Debtor.

25.10. **Stoiber:** Stoiber shall mean Maria Gabriela Stoiber, Debtor is the above entitled and numbered case.

25.11. **Assessed Charges:** Assessed Charges shall mean all fees and charges assessed against the Property of the Debtor's estate under Chapter 123 of Title 28, United States Code.

25.12. **Bankruptcy Case:** Bankruptcy case shall mean the Chapter 11 Case of Maria Gabriela Stoiber.

25.13. **Bankruptcy Court:** Bankruptcy Court shall means the United States District Court for the Western District of Texas, having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to section 157 of title 28 of the United States Code, the unit of such District Court pursuant to section 151 of title 28 of the United States Code; or, in the event such Court ceases to exercise jurisdiction over the Chapter 11 Case, such Court or unit thereof that exercises jurisdiction over the Chapter 11 Case in lieu thereof.

25.14. **Bankruptcy Rules:** Bankruptcy Rules shall mean, collectively, (I) the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, and (ii) the Local Bankruptcy Rules applicable to cases pending before the Bankruptcy Court, as now in effect or hereafter amended.

25.15. **Bar Dates:** Bar Dates shall mean the Bar Date for Filing a Proof of Claim in this Case is January 10, 2012, for All Creditors Except a Governmental Unit.

25.16. **Business Day:** Business Day shall mean any day which is not a Saturday, a Sunday, or a "legal holiday" as defined in Bankruptcy Rule 9006(a).

25.17. **Case:** Case shall mean the Chapter 11 Case of Maria Gabriela Stoiber.

25.18. **Chapter 11 Case:** Chapter 11 Case shall mean the case under chapter 11 of the Code, commenced by the Debtor on the Petition Date in the Bankruptcy Court, styled "In re Maria Gabriela Stoiber."

25.19. **Chapter 11:** Chapter 11 shall mean Chapter 11 of the Code. Reference to section numbers are references to sections in the Code, 11 U.S.C., Section 101, et

seq., Public Law 95-598, effective October 1, 1979, as amended, unless otherwise specified.

25.20. **Claim or Claims:**   Claim or Claims shall mean a right to payment from the Debtor, which is evidenced by a timely filed proof of claim or application for payment which is allowed by the Court, or if a proof of claim is not filed, a right which otherwise appears in the applicable schedules of the Debtor and (1) is not listed as disputed, contingent or unliquidated, or (2) has been resolved by Final Order of the Court pursuant to the terms of this Plan.

25.21. **Claimant or Claimants:**   Claimant or Claimants shall mean the holders of a Claim against the Debtor.

25.22. **Claims of the Estate:**  Claims of the Estate shall mean all asserted and unasserted Claims of the Debtor, existing prior to Confirmation, against anyone.

25.23. **Class of Claims and Payment:**   Class of Claims and Payment shall mean the various classes of Claims that are defined in this Plan.  This Plan is intended to deal with all Claims against the Debtor of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Court pursuant to Section 502(h) of the Code.  However, only those Claims allowed pursuant to Section 502(a) of the Code will receive payment under this Plan.

25.24. **Class or Classes:** Class or Classes shall mean the class or class into which Holders have been placed in this Plan.

25.25. **Code:** Code shall mean the Bankruptcy Reform Act of 1978, sometimes referred to as the Code of 1978, as contained in Title 11 U.S.C., Section 101, et seq., and all amendments thereto.

25.26. **Collateral:**  Collateral shall mean Property in which the Debtor have an interest and which is subject to a Lien (other than any Lien granted under this Plan) securing an Allowed Secured Claim, but only to the extent of the Debtor's interest in such property; and "Related Collateral" shall, with respect to any Allowed Secured Claim, mean all Collateral securing such Allowed Secured Claim.

25.27. **Collateral Value:** Collateral Value shall mean the fair market value, at Confirmation, of any perfected and valid interest in collateral of the Debtor, securing any Claim, as agreed to by the Debtor and the effected Secured Creditor or, in the event of disagreement, as resolved by Final Order of the Court pursuant to Section 506(a) or Section 1111(b) of the Code.

25.28. **Confirmation:**   Confirmation shall mean the entry by the Court of an Order Confirming Plan at or after a hearing held pursuant to Section 1128 of the Code.

DEBTOR'S DISCLOSURE STATEMENT- Page 46

25.29. **Confirmation Date:** Confirmation Date shall mean the date the Confirmation Order is entered by the Court.

25.30. **Confirmation Hearing:** Confirmation Hearing shall mean the hearing to be held by the Court to determine whether or not the Debtor' Plan meets the requirements of Chapter 11 of the Code and is entitled to Confirmation.

25.31. **Confirmation Order:** Confirmation Order shall mean the Order of the Court confirming this Plan pursuant to Section 1129 of the Code.

25.32. **Court:** Court shall mean the United States Bankruptcy Court, Western District of Texas, including the United States Bankruptcy Judge presiding in the Chapter 11 Case of the Debtor.

25.33. **Creditor or Creditors:** Creditor or Creditors shall mean all Creditors of the Debtor holding Allowed Claims for debts, liabilities, demands or Claims of any character whatsoever, as defined in Section 101(4) of the Code.

25.34. **Cross-References, etc.:** Cross References, etc. shall mean references in this Plan of Reorganization to any Section which are, unless otherwise specified, to such Section of this Plan of Reorganization. The words "hereof", "herein", "hereunder" and similar terms shall refer to this Plan and Disclosure Statement of Reorganization and Disclosure Statement and not to any particular Section or provision of this Plan and Disclosure Statement of Reorganization and Disclosure Statement.

25.35. **Debtor:** Debtor shall mean Maria Gabriela Stoiber.

25.36. **Debtor-In-Possession:** Debtor-In-Possession shall mean the Debtor in the capacity and with the status and rights conferred by Section 1107 of the Code.

25.37. **Disallowed Claim:** Disallowed Claim shall means any Claim (I) listed as disputed, contingent or unliquidated in the Debtor's schedules for which a proof of claim has not been timely filed, or (ii) for which a Final Order disallowing the Claim has been entered.

25.38. **Disclosure Statement:** Disclosure Statement shall mean this Plan and Disclosure Statement of Reorganization and Disclosure Statement filed by the Debtor in this Case in accordance with Section 1125 of the Code, as it may be amended, supplemented or modified.

25.39. **Disputed Amount:** Disputed Amount shall mean to with respect to any Disputed Claim, the amount of the Claim that is in dispute.

25.40. **Disputed Administrative Claim:** Disputed Administrative Claim shall means any Administrative Claim (I) as to which the Debtor, or any other party in interest

has filed a timely objection or request for estimation in accordance with the Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order; and (ii) any Fee Request that has not been Allowed by a Final Order of the Bankruptcy Court.

25.41. **Disputed Claim:** Disputed Claim" shall mean, unless otherwise set forth in this Plan, (I) a Claim (or portion thereof) against the Debtor as to which an objection to the allowance thereof has been interposed within the time period set forth herein for doing so, and which objection has not been determined by a Final Order, and (ii) a Claim listed on the Debtor's schedules as disputed, contingent, or unliquidated and with respect to which no proof of Claim has been timely.

25.42. **Effective Date:** Effective Date shall mean thirty (30) days after Confirmation.

25.43. **Entity:** Entity shall mean includes but is not limited to individuals, partnerships, corporations, estates, trusts, partners of the Debtor, and governmental units.

25.44. **Estate:** Estate shall mean the estate of the Debtor-in-Possession in question created under the Code by the commencement of the Chapter 11 Case. Any references to actions taken by the Estate refers to actions taken by the representatives of the Estate acting in their representative capacity.

25.45. **Fee Request:** Fee Request shall mean an Administrative Claim filed by a Professional Person for fees and costs incurred in behalf of the Debtor or a Committee in the Chapter 11 Case.

25.46. **Final Decree:** Final Decree shall means the final decree closing the Jointly Administered Chapter 11 Case, to be entered by the Bankruptcy Court pursuant to Bankruptcy Rule 3022.

25.47. **Final Order:** Final Order shall means (I) an order or judgment of the Bankruptcy Court or other applicable Court as to which the time to appeal has expired and as to which no appeal shall then be pending or as to which any right to appeal shall have been waived in writing in form and substance satisfactory to the Debtor; or (ii) in the event that an appeal is timely filed, an order or judgment of the Bankruptcy Court or other applicable Court for which no stay is in effect. In the case of the Confirmation Order, it shall be deemed a Final Order on the first date on which no stay of the Confirmation Order is and remains in effect that is at least eleven (11) days (calculated in accordance with Bankruptcy Rule 9006(a)) following the entry of the Confirmation Order.

25.48. **Holder:** Holder shall mean a person or entity that asserts a Claim against a Debtor, Debtor in Possession or Estate arising before the Confirmation Date.

25.49. **Lien:** Lien shall mean any charge against or interest in property to secure payment of a debt or performance of an obligation as defined in Section 101(33) of

the Code, and includes, without limitation, any judicial lien, security interest, mortgage, deed of trust and statutory lien as defined in Section 101 of the Code.

25.50. **Order:**  Order shall mean a judgment, order or other decree of the Bankruptcy Court the effect of which has not been stayed.

25.51. **Order Confirming Plan:** Order Confirming Plan shall mean the Final Order of the Court determining that this Plan meets the requirements of Section 1129 of the Code and is entitled to Confirmation.  The date that the Confirmation Order is entered d on the Court Clerk's docket is the Confirmation Date.

25.52. **Other Priority Claims:** Other Priority Claims shall mean any pre-petition Claim entitled to a priority in payment under §§ 507(a) (3), (4), (6) and (8) of the Code, other than Priority Tax Claims.

25.53. **Person:**  Person shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof or other entity.

25.54. **Plan:** Plan shall mean the chapter 11 Plan, including any exhibits thereto and all documents incorporated by reference, either in their present form or as they may be altered, amended, or modified from time to time in accordance with the Code and Bankruptcy Rules.

25.55. **Plan Payments:** Plan Payments shall mean the payments, in cash or other distributions of value, made by the Debtor pursuant to the Confirmed Plan of Reorganization.

25.56. **Plan Year:** Plan year shall mean twelve (12) months commencing on the first day of the first full month following the Effective Date and continuing until the last day of the twelfth (12th) month thereafter, and each succeeding twelve (12) months thereafter.

25.57. **Pre-Petition Agreement:**  Pre-Petition Agreement shall  mean all contracts and agreement to which the Debtor are a party, executed, or that went into effect before the Petition Date, other than unexpired leases and executory contracts.

25.58. **Preservation of the Estate:** Preservation of the Estate shall mean the actual, necessary costs and expenses of preserving the Debtor's estate (other than such Claims or portions thereof which, by their express terms, are not due or payable on the Effective Date.

25.59. **Priority Claim:**  Priority Claim shall mean any pre-petition Claim entitled to a priority in payment under §§ 507(a) (3), (4), and (6) of the Code, and shall not include any Priority Tax Claim.

25.60. **Priority Creditor:** Priority Creditor shall mean the owner and holder of a Priority Claim.

25.61. **Priority Tax Claim:**   Priority Tax Claim shall mean a Claim of a governmental unit of the kind specified in section 507(a) (8) of the Code.  If a Claim of governmental unit is allowed as a Secured Claim, it is not a Priority Tax Claim**.**

25.62. **Professional Fees:**  Professional Fees shall mean the full amount of all Claims for allowance of compensation or reimbursement of costs and expenses for legal, accounting, or other professional services under Section 330 or Section 331 of the Code or otherwise allowed by the Court pursuant to the provisions of Section 503 of the Code.

25.63. **Professional Person:**  Professional Person shall mean any Person, including attorneys and accountants for a Debtor or Committee retained or to be compensated pursuant to § 327, 328, 330, 331, 503(b) (2), or 1103 of the Code.

25.64. **Property of the Estate:**    Property of the Estate shall mean all property comprising or contained in the Estate, as set forth in § 541 of the Code.

25.65. **Proponent:**  Proponent shall mean the Debtor.

25.66. **Pro Rata:** Pro Rata shall mean with respect to each Allowed Claim, the ratio, as of each Distribution Date, of the amount of such Allowed Claim to the aggregate amount of (I) all Allowed Claims in the same Class, plus (ii) all Disputed Claims relating to such Class, as the amount of such Disputed Claims are reduced from time to time by virtue of determinations of the Bankruptcy Court as to such Disputed Claims.

25.67. **Property or Properties:**  Property or Properties shall mean all "Property of the Estate of the Debtor" as previously or hereafter determined by Final Order of a Court of competent jurisdiction and/or as defined in Section 541 of the Code, including, but not limited to, any and all claims of the Estate or causes of action in favor of the Debtor against third parties (except as otherwise provided herein).

25.68. **Reorganized Debtor:**  Reorganized Debtor shall mean Maria Gabriela Stoiber, after the Effective Date.

25.69. **Rule or Rules:**  Rule or Rules shall mean the Federal Bankruptcy Rules of Procedure and any applicable Local Bankruptcy Rules adopted by the Court.

25.70. **Schedules:**  Schedules shall mean the schedules of assets and liabilities filed by Debtor as required by section 521(1) of the Code, Bankruptcy Rule 1007(b) (1), and Official Bankruptcy Form No. 6, as amended from time to time.

25.71. **Secured Claim:** Secured Claim shall mean that portion of an Allowed Claim equal to the value, as of the Confirmation Date (or such other date found by the Bankruptcy Court, pursuant to Code section 506(a), to apply) of the valid, perfected interest of the Holder of a Claim in Property of the Estate, which interest secures a Claim, to the extent of the creditor's interest in the Estate's interest in such property, all as determined by the Bankruptcy Court pursuant to Section 506(a) of the Code and Bankruptcy Rule 3012, or as determined by a settlement between the Debtor and Holder of the Secured Claim approved by the Bankruptcy Court after notice to creditors.

25.72. **Substantial Consummation of this Plan:** Substantial Consummation shall mean the accomplishment of all things provided for in this Plan, pursuant to Section 1101 of the Code.

25.73. **Successor to the Debtor:** Successor to the Debtor shall mean a Limited Liability Company to be formed by the Debtor under the laws of the State of Texas, as described in Paragraph 10.5 above, in which the Debtor shall be the sole member."

25.74. **Tax Claim:** Tax Claim shall mean a Priority Claim entitled to priority, pursuant to Section 507(a) (8) of the Code.

25.75. **Tax Claimant:** Tax Claimant shall mean the holder of a Priority Tax Claim.

25.76. **Unclaimed Property:** Unclaimed Property shall mean any funds or property dedicated for distribution under this Plan, which funds or property are unclaimed on and after such attempted distribution, including without limitation (a) checks (and the funds represented thereby) that have been returned as undeliverable without a proper forwarding address; (b) funds for checks that have not been paid or presented for payment; (c) checks (and the funds represented thereby) that were not mailed or delivered or that were returned because of the absence of a proper address, and that the Debtor after reasonable efforts are unable to deliver to a proper address.

25.77. **Unsecured Claim:** Unsecured Claim shall mean a Creditor, other than one having a right to priority under Section 507 of the Code, and which is not a Secured Claim. An unsecured Claim is a Claim included in Class 3 of this Plan.

25.78. **Unsecured Creditor:** Unsecured Creditor shall mean an Unsecured Creditor of the Debtor holding an Allowed Claim for an unsecured debt, an unsecured liability, an unsecured demand or an Unsecured Claim of any character whatsoever, except a Claim entitled to priority pursuant to Section 507 of the Code.

25.79. **Unsecured Non-Priority Claim:** Unsecured Non-Priority Claim shall mean any Claim that is not (I) a Secured Claim, (ii) an Administrative Claim, or (iii) a Priority Claim or Priority Tax Claim.

25.80.**United States Trustee Fees:** United States Trustee Fees shall mean the fees and expenses of the United States Trustee.

Date: April 19, 2012

<u>/S/  Maria Stoiber</u>
Maria Stoiber

Attorneys for Debtor

<u>/s/Sidney Diamond</u>
Sidney J. Diamond, Esq
Karla P. Martinez. Esq
3800 N. Mesa, Suite B-3
El Paso, Texas 79902
(915) 532-3327 (Voice)
(915) 532-3355 (Fax)
sidney@sidneydiamond.com